**In the Matter of Wm. Bryan OSBORNE, Contemnor, Appellant.**

**No. 19496.**

United States Court of Appeals
Ninth Circuit.

April 16, 1965.

Bruce I. Hochman, Beverly Hills, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Sec.; J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Sec.; Robert L. Brosio, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG, and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge:

This proceeding grew out of the trial of one Memphry M. Carter, Jr., No. 33404-CD in the Southern District of California on charges of forging government checks. The visiting judge presiding was the Honorable John F. Kilkenny, sitting by regular assignment from the District of Oregon. Appellant represented Carter as counsel. His client was acquitted on one count, and convicted on two. The trial lasted one and one-half days.

After sentence, the court conducted a summary contempt proceeding, under Rule 42(a) (18 U.S.C.). Appellant was found guilty, was fined $200.00 and sentenced to ten days confinement. The judgment of contempt appears in the margin.[1]

1. "JUDGMENT OF CONTEMPT AND SENTENCE"

"The undersigned Judge of the Court certifies as follows:

"(1) That on March 31, 1964, the jury trial of Case No. 33404-CD, United States v. Memphry M. Carter, Jr., was commenced. The defendant was represented by William Bryan Osborne.

"(2) The defense counsel in the course of the trial at numerous points in the

proceedings made statements in Court directed to the Court which went far beyond the realm of energetic advocacy on behalf of his client. The statements of counsel which are referred to below were stated in open Court, in the presence of the jury in a tone of voice and general manner which must be characterized as surly, defiant and contemptuous.

"(3) The defense counsel's conduct of his case may be typified by an incident which occurred on the first morning of the trial. The counsel for the prosecution had just completed the direct examination of the chief Government witness, Nathan Keynard, the payee of the check which the defendant was charged with forging and uttering. After commencing his cross-examination counsel for the defense requested that the noon recess be taken. The defendant's counsel expressed the desire to examine numerous documents, apparently records of the defendant which he had brought to Court, prior to continuing his examination.

"When the Court instructed counsel to continue, counsel replied.

"MR. OSBORNE: We will go until I get finished, which may be 5:00 o'clock this afternoon then, I would like to take a recess to get organized.

\* \* \* \* \*

"MR. OSBORNE: I have a number of documents to look through in respect to my examination.

\* \* \* \* \*

"When the Court noted that counsel should have previously examined his exhibits and again directed counsel to continue, counsel replied:

"MR. OSBORNE: I think I am entitled to rely upon the normal court hours.

\* \* \* \* \*

"The Court repeated its direction and counsel stated:

"MR. OSBORNE: Your Honor, I would again request a recess.

"Again told to proceed, counsel replied:

"MR. OSBORNE: Your Honor, it's time for the recess.

"THE COURT: No, it's not, counsel.

"MR. OSBORNE: I know you are running this Court, your Honor. However I think counsel are entitled to go out to lunch at the normal hour. I have an appointment in my office. The jury is hungry. I don't want to try my case to an uncomfortable jury. And I don't think you should take out a personal thing on me.

"Counsel continued to refuse to act in accord with the Court's direction as follows:

"MR. OSBORNE: Your Honor, I am quite uncomfortable going on now, I have been here for two solid hours. I realize your Honor is running this Court. However, I don't feel that I can do justice to my client. I feel that it is a deprivation of his rights to compel counsel—

"After another direction to proceed counsel stated:

"MR. OSBORNE: I would like to sit down and review some documents so that it's not necessary to ramble.

"Told to either close or proceed, counsel stated:

"MR. OSBORNE: That's no option, your Honor, not when a man is charged with a serious crime. He is entitled to counsel who has time to sit down and prepare a case adequately.

"I didn't know what this man was going to say when he came on here. There are a number of documents I have to look at. I don't want to ramble any further. I would like to ask precise questions based upon information, instead of trying to read and go along because you are in a hurry, unexpectedly.

"When the Court's direction was repeated counsel harangued the Court as follows:

\* \* \* \* \*

"MR. OSBORNE: Your Honor, the Bar Association met last Saturday, and we discussed this problem fully. This is the same as when Mr. Belli was compelled to argue a case at midnight.

"You are entitled, as a matter of right, to expect that the court will honor its regular hours, unless the court gives you advance warning.

"I fully anticipated this court to break at 12:00 o'clock noon. I made appointments to interview witnesses.

"This man has made statements that I have to go into documents, some of which are not even here. I do not intend to terminate this man's cross examination, until I have had time to go into those.

"Now, if you are going to keep me standing here until 2:00 o'clock rambling, I will ramble. But I will not terminate.

\* \* \* \* \*

"MR. OSBORNE: I think that the fact that the entire Bar Association is concerned about judges who unfairly force counsel to continue when they are not prepared to do so should demonstrate to the court that the Bar of this county is concerned about this type of conduct.

\*     \*     \*     \*     \*

"MR. OSBORNE: I am going to keep going your Honor, until you have to break.

"Counsel finally stated he would continue his examination but accompanied his answer with the following remarks.

"MR. OSBORNE: I am going to be very slow because I have to read these documents. I hate to keep these people from their lunch. I think it works a hardship on my client. Because if they are unhappy, they are apt to take it out on him.

"I think your antagonism is unfair to my client.

"THE COURT: Now, antagonism— there is nothing antagonistic here.

"MR. OSBORNE: You are · smiling now, but you haven't been smiling all morning.

"THE COURT: Would you note the time into the record?

"MR. OSBORNE: 12:25 o'clock.

"THE CLERK: 12:25.

"THE COURT: 12:25. All right. Now, proceed, counsel, with your cross examination.

"MR. OSBORNE: Your Honor, for the record I want to also add that I was called by this court and asked to come over here early, which precluded—which upset some plans I had this morning of talking to my witnesses. I was told to start this case before your Honor at 9:30. I received a call saying that the jury was sent here early.

"I have now been compelled to go into the lunch hour and miss appointments with prospective witnesses in my office.

"I think that together this is adding up to conduct on the part of the court which is depriving this man of a fair trial.

"When counsel again requested time to examine his documents and the Court inquired how long counsel had known the case was to be tried on the day in question counsel replied.

"MR. OSBORNE: I have known that it was set before your Honor, a visiting judge, for exactly 24 hours.

"THE COURT: No, how long have you know that it was going to be tried today, counsel?

"MR. OSBORNE: I anticipate trying cases with the normal courtesies extended by the judges of the bench.

"THE COURT: Now, counsel, how long have you known that this case was set for trial for today?

"MR. OSBORNE: I have known this case was set for trial since it was set for trial by Judge Crary on January 13th.

"The Court again requested its request the counsel proceed, noting aloud that counsel had looked at his watch at least twenty times. Counsel replied:

"MR. OSBORNE: I will keep looking at it, your Honor.

"(4) This episode merely represents one instance of counsel's conduct of his case which as the quoted excerpts clearly indicate was based on the strategy of deluding the jury into the erroneous view that the Court was prejudiced to counsel and his client, thereby creating sympathy for the cause of the defense. Similar incidents occurred throughout the trial, both prior to and after the instant episode. While counsel is entitled to choose his strategy, when in carrying out his plans in acts in complete disregard for the accepted standards for orderly judicial proceedings his conduct requires correction. Spirited advocacy is commendable. An attempt, however, to turn a legal proceeding into a mere vehicle for the dramatic talents of counsel is intolerable.

"As the first Canon of Professional Ethics of the American Bar Association states in part, 'It is the duty of the lawyer to maintain towards the Court a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance.'

"Wherefore, the Court finds that William Bryan Osborne, as an attorney and officer of the Court in the presence of the Court willfully, contumaciously, and in utter contempt for the requirements of orderly judicial proceedings disregarded the orders and directions of the Court and finds William Bryan Osborne in contempt of Court.

"The Court in the interest of fairness and justice to the defendant, Memphry M. Carter, Jr., refrained from passing on the conduct of Osborne until after the return of the verdict and the pronouncement of the judge of commitment and sentence.

"Osborne being asked in open Court if he had anything to say after the Court had outlined the general charges and findings of contempt against him, merely stated that he desired a hearing. The request for a hearing was denied.

"Therefore, IT IS ADJUDGED that William Bryan Osborne is hereby committed to the custody of the Attorney General, or his authorized representative, for imprisonment in a jail type institu-

Jurisdiction of this appeal rests on §§ 1291 and 1294 of Title 28, U.S.C.

The judgment of contempt clearly discloses facts showing the appellant herein acted in a contemptuous manner toward the court in its presence, and the presence of the jury, i. e., "in open court." The appellant's language is quoted in the judgment, and no attack is here made on the authenticity of the quotations.[2]

When the court attempted to require the trial to continue in taking of evidence after twelve noon, appellant objected. Shortly after the beginning of the cross-examination of a witness the appellant requested that the noon recess be taken, in order that the appellant could organize his own documents. When the court directed the appellant to continue his cross-examination, counsel refused and continued to refuse, despite repeated directions by the court to proceed with the examination of the witness. The appellant later added another reason for the need of a recess, namely that the jury was hungry. Finally, a third reason, the need to interview a defense witness was added. In the course of the repeated refusals to follow the directions from the bench the appellant accused the court of being antagonistic and treating the appellant in the same way as the noted Mr. Belli was treated in a certain Dallas, Texas trial.

■ Appellant first urges that there was no contemptuous act. He urges that because this was a criminal trial, his convenience at the trial, and not the court's, should be considered paramount by us. Nowhere does he point out wherein his client's rights were not respected by the court. On January 13, 1964, the case had been set down for trial on March 31, 1964. Appellant knew of the trial date

setting. At the trial on March 31, 1964, he stated he needed time "to examine documents." They were not named nor described. No showing of "surprise" occasioned by reason of the witness's testimony was shown, nor attempted to be shown, nor even suggested. Appellant said much more than that he desired "to examine documents," as is shown above. Appellant changed his ground for his unwillingness to proceed. He was contemptuous in what he said and in the manner in which he said it, and we so hold.

■ Appellant secondly urges there was no contempt in view of the "provocation" on the part of the trial court. This seems obviously an afterthought by appellant's counsel, seeking to avail himself of the theory expressed in Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954). That case does not aid appellant's posture. There the conduct of the judge was characterized by the Supreme Court as having "hardly reflected the restraints of conventional judicial demeanor." Here no such, nor any, lack of judicial restraint is shown. Quite the opposite appears from so much of the record as is before us.[3]

■■ As a third reason for us to believe no finding of contempt was proper, appellant urges that we should not prevent counsel from the fearless, vigorous and effective performance of his duty. We completely agree. Sacher v. United States, 343 U.S. 1, 12, 13, 72 S.Ct. 451, 96 L.Ed. 717 (1952). But such a theory does not require us, nor the court below nor any court to countenance the conduct displayed by appellant in this case. In re McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962) is likewise inapplicable. There McConnell was pressing a

---

tion for a period of ten days and is ordered to pay a fine of $200.00 to the United States of America.

"IT IS FURTHER ORDERED that execution of the sentence be stayed for a period of ten days to give said attorney an opportunity to appeal. Bail on the appeal, if any, is fixed at $100.00."

2. Appellant goes further. He now "deeply regrets his choice of words, and his misplaced vigor." (Br. p. 7.)

3. If there was any support in the record for this contention, we must assume appellant would have produced it for this court's consideration.

legal contention, which in no way "create[s] an obstruction which blocks the judge in the preformance of his judicial duty." Here the appellant created just such an obstacle.

At no time was appellant in the court below attempting to preserve a legal point, or any legal contention. He simply refused to permit the district judge to run his court, and by sly statements obviously made an attempt to influence the jury in his client's favor.

■ Assuming the contempt existed, the trial court erred, says appellant in not setting the matter for hearing under Federal Rules of Criminal Procedure 42 (b). Panico v. United States, 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963). Panico permits such a hearing but does not require it. This contempt was committed in the actual presence of the court. He saw the conduct and heard the language. Such contempt may be summarily punished.

■■ But the court here delayed the summary judgment until after the verdict was returned and the client Carter was sentenced. He did this "in the interest of fairness and justice" to the defendant. The time elapsed was from April 1st to May 14th, 1964, due to the trial judge's physical absence from the Southern District of California. Appellant states the contention (of fairness to the client Carter) is debatable. We do not see how. We think delay was not only proper, but laudable on the part of the trial judge. The word "summarily" in the rule does not require a hasty determination. Hallinan v. United States, 182 F.2d 880 (9th Cir. 1950).

■ Finally, appellant urges the sentence was excessive. We note, as appellant requests, that in both Offutt and McConnell, supra, the courts of appeal saw fit to reduce the jail sentences there imposed. We need not even determine if the sentence is severe. For a sentence, even a severe one, is within the court's discretion. In re Maury, 205 F. 626, 632 (9th Cir. 1913); Hallinan v. United States, supra, 182 F.2d at 888. Nor is the ten day jail sentence cruel or unusual punishment; nor does it shock our respective or collective consciences.

■ Although not raised by appellant nor mentioned by appellee, we must consider a further point. The power of the court is to punish by fine or imprisonment (18 U.S.C. § 401), and not both. The statute so says, and being criminal, must be strictly construed. In re Bradley, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 500 (1943); United States v. De Simone, 267 F.2d 741 (2d Cir.), cert. granted 361 U.S. 125, 80 S.Ct. 253, 4 L.Ed.2d 167 (1959) (cause remanded with instructions to dismiss the proceedings as moot); MacNeil v. United States, 236 F.2d 149, 61 A.L.R.2d 1075 (1st Cir.), cert. denied 352 U.S. 912, 77 S.Ct. 150, 1 L.Ed.2d 119 (1956); Ex Parte Davis, 112 F. 139 (5th Cir. 1901).

■ This is a charge of contempt initiated by the trial court of its own motion for the vindication of the court's authority, and the punishment of a public wrong. It is therefore criminal contempt, and not civil contempt, and not both. MacNeil v. United States, supra.

It is therefore one contempt, and can be punished once, by either confinement or fine.

We affirm the judgment of contempt, vacate the sentence, and remand the matter to the district court for resentencing.