Memphry M. CARTER, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20605.

United States Court of Appeals
Ninth Circuit.

Feb. 16, 1967.

Mitchell W. Egers, Hanson & Egers, Los Angeles, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Jo Brin Schulman, Asst. U. S. Attys., Asst. Chief Crim. Div., Robert L. Brosio, Asst. U. S. Atty., for appellee.

Before DUNIWAY and ELY, Circuit Judges, and POWELL, District Judge.

ELY, Circuit Judge.

In an indictment consisting of three counts, appellant was charged with presenting false claims to the Internal Revenue Service (18 U.S.C. § 287), forging a United States Treasury check (18 U.S.C. § 495), and uttering and publishing the same Treasury check with the forged endorsement (18 U.S.C. § 495).

Following appellant's plea of not guilty, there was a trial by jury. The appellant was found guilty of the offenses alleged in Counts Two and Three of the indictment, the forging of the Treasury check and the uttering and publishing of the instrument. The jurors were unable to reach agreement and return a verdict as to Count One, alleging the presentation of false claims, and when appellant was sentenced for the two offenses of which he had been found guilty, Count One, on motion of the Government, was dismissed.

It is not here claimed that the evidence was insufficient to support conviction; nevertheless a brief review is appropriate. The case for the prosecution was based, essentially, upon the following:

Appellant and one Nathan Keynerd had been friends for a number of years. In April, 1962, Keynerd visited appellant's office, requested appellant to prepare his, Keynerd's, federal income tax return for the calendar year 1961, and paid appellant $10, in advance, for the anticipated services. Keynerd testified that he did not see the completed return before it was filed. He expected to receive a refund of excess income taxes which had been collected by his employer's withholding of portions of his wages. He made inquiry of appellant concerning his failure to receive the anticipated refund and, receiving answers which were not satisfactory to him, he contacted the Internal Revenue Service.

He then advised appellant that he had been told by the service that a refund check in the amount of $620.95 had been issued. According to Keynerd, he was told by appellant that he had received the check and that his, appellant's, son had cashed it.

The check is made payable to "N. & K. Keynerd." The endorsements consist of three handwritten names, Nathan Keynerd, Katherine Keynerd, and the name of appellant written over his business stamp. Evidence was produced to the effect that appellant thereafter made several conflicting statements as to the endorsements. It was established that the check had been deposited in appellant's bank account. Keynerd testified that he had not endorsed it. A Special Agent of the Intelligence Division of the Revenue Service testified that appellant had admitted to him that the endorsement of his own name had been written by him and also admitted that the other endorsements, the names of the two payees, appeared to be in his handwriting. A Special Agent of the Secret Service testified that appellant had admitted to him that he had written all of the endorsements, insisting to this Agent that Keynerd had given him the authority to do so. A handwriting expert produced by the prosecution expressed the opinion that all the endorsements had been written by appellant.

The principal defense was that Keynerd was indebted to appellant for cash loans made in the course of card games which the two had played between the time of the filing of the return and the time when appellant received the refund check. Appellant insisted that Keynerd had authorized him to cash the check.

He testified that when he offered Keynerd the balance in excess of the amount of the claimed indebtedness Keynerd refused to accept it.

To us, appellant presents three contentions. We are convinced that none of them has merit.

It is first urged that the district judge displayed unbecoming hostility to the attorney who represented appellant during the trial and that for such reason the trial was prejudicially unfair. This contention is forcefully presented in a commendable manner by appellant's present counsel, attorneys who were not involved in the court below. There the appellant was represented by attorney William B. Osborne. The record reveals, undeniably, that after the trial commenced there developed an atmosphere of hostility. During the trial, there were a number of disputes between Osborne and the district judge. Osborne's conduct led to the judge's determination, following the trial, that Osborne had been contemptuous. Osborne appealed, and a panel of our court determined that the judgment of contempt was justified. In re Osborne, 344 F.2d 611 (9th Cir. 1965). In reaching that decision our court wrote, concerning the conduct of the district judge, "Here no such, nor any, lack of judicial restraint is shown. Quite the opposite appears from so much of the record as is before us." 344 F.2d at 615. We agree.

■ A judge must strive, as did the trial judge in this case, to maintain his composure, even when badgered by contemptuous counsel. See United States v. Dennis, 183 F.2d 201 (2d Cir. 1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), rehearing denied, 342 U.S. 842, 72 S.Ct. 20, 96 L.Ed. 636 (1951). He is not required, however, to abdicate his power or duty to control the proceedings over which he presides. United States v. Ross, 321 F.2d 61 (2d Cir. 1963), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963); Butler v. United States, 191 F.2d 433 (4th Cir. 1951). We need not repeat the extensive verbal exchanges which occurred between appellant's counsel and the district judge. They already appear in the report of *In re Osborne,* supra. They reveal an attitude on the part of the judge which, in the light of the provocation, was entirely consonant with traditional concepts of proper judicial bearing and demeanor. In his instructions to the jury, the judge made it clear that any comments which he had made were not to be interpreted as an expression of his opinion as to the guilt or innocence of the accused. The appellant's selection of counsel may have been unfortunate, but he is in no position to take present advantage of unsuccessful tactics which could have been chosen with deliberate premeditation. Likely, it is not unprecedented that an attorney with a difficult challenge misdirects his zeal in the hope that provoked antagonism of the judge may incite sympathetic consideration by the jury. Zealous advocacy is never to be condemned, and a lawyer is not obliged to suffer judicial abuse. See, e. g., Young v. United States, 120 U.S.App.D.C. 312, 346 F.2d 793 (1965); United States v. Coke, 339 F.2d 183 (2d Cir. 1964). Here, however, appellant seeks to equate his attorney's intolerable rudeness with militant advocacy, and this cannot be done.

The foregoing comments are also relevant to appellant's second specification of error, to which we now direct our attention. It is contended that the district judge abused his discretion in failing to recess the trial promptly at 12 o'clock noon on its first day and delaying the recess until 12:35 P.M. The trial commenced on March 31, 1964, and for over two months, since January 13, 1964, appellant's counsel had known when the trial would begin. The prosecution had produced Keynerd, its first and principal witness, and had completed his direct examination. Appellant's counsel had begun to cross-examine Keynerd when the hour of noon arrived. At that point the defense attorney requested that the court declare a recess. When the judge announced his intention to continue with the trial at that time, the attorney began to protest. He first stated that he would

"like to take a recess to get organized." He then represented that he desired "to look through" a number of unspecified documents. After a further exchange, he stated his belief that he was "entitled to rely upon the normal court hours." Continuing to request a recess, with the request being repeatedly denied, the attorney than represented that he had "an appointment in my office." He then said, "The jury is hungry. I don't want to try my case to an uncomfortable jury." Finally, when the judge instructed the attorney to either close his cross-examination or proceed, counsel replied, in part, "Now, if you are going to keep me standing here until 2:00 o'clock, rambling, I will ramble. But I will not terminate." After commenting that "the entire Bar Association is concerned about judges who unfairly force counsel to continue * * *," Osborne added, "I am just going to keep going, your Honor, until you have to break" and, "I think your antagonism is unfair to my client."

All of this constituted a part of the basis for the ultimate determination that Osborne had been guilty of direct contempt. The particular conduct of the attorney in connection with his request for the recess was treated by our court in *In re Osborne*, supra. 344 F.2d at 615. As there emphasized, there is nothing in the record which demonstrates that the appellant himself suffered prejudice from the fact that the proceedings continued for thirty-five minutes beyond the hour of noon. Much of the time was consumed by Osborne's pursuit of his announced intention to "ramble," and we cannot discern that effective cross-examination of Keynerd was impaired by the denial to appellant's attorney of the thirty-five minute period to examine documents or to "get [himself] organized." The record discloses that Osborne continued with his cross-examination of Keynerd when the court, after the recess, reconvened at 2:30 P.M.

In the absence of manifest abuse, the manner in which a judge exercises his discretion in regulating the time of court sessions will not be disturbed. These times should be regulated for the convenience of all persons concerned with the trial and not simply for the convenience of an attorney unable to advance consistent reasons for his requested favor. In the instant case, the district judge explained the reason for his continuing with the trial into the noon hour, that another judicial assignment would prevent his resumption of the trial in the very early afternoon.

Finally, it is claimed that appellant's counsel was unduly restricted in the conduct of his cross-examination of the witness Keynerd. The particular cross-examination was directed to the relationship of Keynerd to two women, one who had become the wife of appellant, and the other, the former wife of the witness. There is a suggestion that the witness, after having been divorced from his wife, resumed relations with her without remarriage, and appellant's counsel was apparently endeavoring to develop this fact. It is seen that in the cross-examination of Keynerd, covering seventy-one pages of the transcript, there was adequate revelation of all of the circumstances of the relationship between Keynerd and appellant's wife which would bear upon the asserted prejudice of Keynerd against appellant. The trial judge merely prevented needless repetition. As to the attempted examination of Keynerd on the nature of his relationship with his former wife, the subject was irrelevant to the issues with which the trial was legitimately concerned. Very recently our court expressed certain views pertaining to the right of cross-examination. Harris v. United States of America, 371 F.2d 365 (9th Cir. 1967). That which Judge Browning there wrote is applicable to the contention made in this case.

Affirmed.