**Joseph TREMARCO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. No. 76–422.

United States District Court, D. New Jersey.

May 17, 1976.

Barry D. Maurer, Newark, N. J., for petitioner.

Jonathan L. Goldstein, U. S. Atty., District of New Jersey by Edwin R. Matthews, Asst. U. S. Atty., Newark, N. J., for respondent.

## OPINION

BIUNNO, District Judge.

Tremarco has filed a petition, purportedly under 28 U.S.C. § 2255, asking to have vacated his convictions and sentences imposed on Counts I and IV of the indictment in Crim. No. 19–71, in this court.

■ In accordance with the statute, the court has examined the motion, the files and records in Crim. No. 19–71, to determine whether they conclusively show that Tremarco is entitled to no relief. If such showing does not appear, then notice must be given to the U. S. Attorney and a hearing held, after which the issues are determined with findings of fact and conclusions of law with respect thereto. The motion may be decided, under the statute, without requiring the production of the prisoner at the hearing if one is called for.

The motion, as well as the files and records in the case, show the following history. Tremarco was convicted in 1971 in the Supreme Court of New York, Kings County, of the crimes of attempted murder, assault in the first degree, and possession of a dangerous weapon. He was sentenced to the maximum sentence, i. e., 25 years' imprisonment. The conviction was affirmed on appeal. (Motion, par. 5).

On March 15, 1972, Tremarco was convicted after jury trial on three counts: Conspiracy to steal, etc., goods valued at more than $100, while in interstate commerce, i. e., a conspiracy under 18 U.S.C. § 371, to violate 18 U.S.C. § 659 (Count I); the substantive charge of knowingly possessing the goods stolen in interstate commerce, etc., a violation of 18 U.S.C. § 659 (Count III); the substantive charge of forcibly assaulting an FBI agent while performing his duties, etc., or aiding and abetting therein, a violation of 18 U.S.C. § 111 and § 2 (Count IV).

(Motion, par. 1, files and records of the case).

Tremarco was sentenced on June 2, 1972 by Judge Garth, as follows:

On Count III, 10 years' imprisonment, concurrent with the 25 year New York sentence already imposed;

On Count I, 3 years' imprisonment, consecutive to the sentences on Counts III and IV;

On Count IV, 3 years' imprisonment, consecutive to the sentences on Counts I and III. (Motion, par. 1; files and records of the case)

The net effect of these sentences was a 10 year term concurrent with the New York sentence, followed by a total of 6 years consecutive to the New York sentence. (Motion, par. 2).

Tremarco appealed his conviction in this court, but did not challenge the sentences imposed; the conviction was affirmed by the Court of Appeals, Third Circuit, on February 21, 1973. (Motion, par. 4; files and records of the case).

Thereafter, Tremarco filed a motion to reduce or modify the sentence under F.R. Cr.P. 35, and the same was denied by Judge Garth, who presided at the trial (Motion, par. 4; files and records in the case).

Because he was in custody of New York at the time of his trial here, he was produced under a writ of habeas corpus for trial, and after sentence was imposed was remanded to New York custody. As is customary in such cases, where a federal sentence is to follow a State sentence, the U. S. Marshal filed a "detainer" with the New York authorities. (Motion, par. 9; files and records in the case).

The theme of the motion is that in New York, a long-term prisoner such as Tremarco may be allowed to enter special programs, such as work-release outside the prison under supervision, vocational training within correctional facilities, counseling, outside medical release for problems not capable of adequate treatment in the prison, emergency release for family deaths or serious illness, and the like. It is asserted that because of the filing of the federal "detainer" for the total of 6 consecutive years, Tremarco has been ruled ineligible by the New York authorities for any of these rehabilitative programs (Motion, pars. 7, 8, 9). It is said that the position of U. S. prison authorities is that Tremarco's treatment while in State custody is a matter solely for the State of New York, and that no relief has been obtainable from any source (Motion, par. 9). What relief has been sought, and where, is not indicated.

The claim made is that under these circumstances, the 6 year consecutive sentence imposed here is an unconstitutional deprivation of Tremarco's rights; that it constitutes cruel and unusual punishment, a denial of due process and of equal protection of the laws (Motion, par. 10, 11).

No challenge is made to the 10 year concurrent sentence on Count III. The challenge is to the two 3 year consecutive sentences on Counts I and IV. The sentence on Count I could have been for the maximum 5 years, 18 U.S.C. § 371, and the sentence on Count IV was for the maximum of 3 years, 18 U.S.C. § 111. Fines authorized up to $10,000 and $5,000 respectively, were not imposed.

## JURISDICTION

 The obvious and first question is whether this court has jurisdiction to entertain the motion under 28 U.S.C. § 2255. Tremarco is in State custody, serving a State sentence. Judge Garth's 10 year sentence on Count III, concurrent with the 25 year New York sentence, is in fact and law no more than a recommendation to the Attorney-General, to whose custody Tremarco was committed, to designate the New York institution for service of that federal sentence, 18 U.S.C. § 4082(b). The designation having been made, Tremarco receives credit against both the New York and federal sentences for each day served. But he is undeniably in State custody, not federal custody. Section 2255 applies to a prisoner in custody under a federal court sentence, "claiming the right to be released".

See opinion of Mr. Justice Stewart for the majority, in *Heflin v. U. S.*, 358 U.S. 415, at

420, 79 S.Ct. 451, at 454, 3 L.Ed.2d 407, at 411 (1959), pointing out that

". . . a motion for relief under 28 U.S.C. § 2255, 28 U.S.C.A. § 2255 is available only to attack a sentence under which a prisoner is in custody. That is what the statute says. That is what the legislative history shows. That is what the federal courts, faced almost daily with the statute's application, have unanimously concluded."

In this circuit, this has been the rule since *U. S. v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952). See, *U. S. ex rel. Bogish v. Tees*, 211 F.2d 69, at 71–72 (CA–3, 1954). Other courts have expressed the same view in other language. Thus, in *Gilinsky v. U. S.*, 335 F.2d 914, at 917 (CA–9, 1964), the court observed that "since it is conceded that appellant is validly in custody under at least one count of the indictment, Section 2255 relief is not yet available to him." In *Ragavage v. U. S.*, 272 F.2d 196, at 197 (CA–5, 1959), the court found adequate support for denial of Section 2255 relief because "the detention was state and not federal detention."

In *U. S. v. Kobey*, 109 F.Supp. 192 (DC–Cal.1952), as here, a federal prisoner was released to state custody in order to give effect to an order that the federal sentence be served concurrently with those of the state court. Since California sentences could be served only in California institutions, while federal sentences can be served in any institution selected by the Attorney-General, release to California was essential to concurrent service. The court accordingly ruled that since the defendants were in state custody, it lacked jurisdiction under 28 U.S.C. § 2255 over the subject matter and the persons of the defendants.

*Paolino v. U. S.*, 314 F.Supp. 875 (DC–Cal, 1970) appears to be the only decision to the contrary. There, defendant had pleaded guilty to a federal offense and was placed on 3 years' probation. While on probation, he was convicted of an unrelated State charge and committed to the Los Angeles County Jail.

An order to show cause then issued why his probation should not be revoked, and a federal detainer was filed with state authorities. Defendant then filed a Section 2255 motion asking to set aside his federal sentence on the basis of recent decisions in *Leary v. U. S.*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and *U. S. v. Covington*, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969), which ruled that the privilege against self-incrimination is a complete defense to the federal charge under 26 U.S.C. § 4744(a), and were to be applied retroactively.

In considering the question of jurisdiction under Section 2255, the court regarded the fact that defendant was still on probation and that a federal detainer had been lodged against him, as sufficient to conclude that he was "in custody" within the meaning of Section 2255. *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) was relied on as authority for this ruling.

But *Jones* did not involve Section 2255; rather, that case arose under 28 U.S.C. § 2241, which is the general statute defining the power to grant a writ of habeas corpus, and extends to all cases in which a prisoner is "in custody" regardless of whether it be state or federal custody, where that custody is in violation of the Constitution, laws or treaties of the United States, 28 U.S.C. § 2241(c)(3). The attack in *Jones* was on a *state* sentence claimed to be in violation of the U. S. Constitution, and the question was whether defendant was "in custody" of the *state* at a time when he had been placed on parole.

*Jones* makes no mention of Section 2255 or of *Heflin, supra*. Nor does *Paolino* mention *Heflin*, which is squarely opposed. *Jones* did not in any way alter the decision in *Heflin*, and this court will follow *Heflin* rather than *Paolino*.

### RULE 35 RELIEF

In *Heflin*, the majority opinion by Mr. Justice Stewart noted that while Section 2255 relief was not available to a prisoner in state custody, from which he could not be released under that section even if the federal sentence were vacated, he could apply under F.R.Crim.P. 35 to set aside an illegal sentence "at any time" (i. e., without regard

to the 120 day limit otherwise applicable). Such relief, it was observed, is available where the claim can be established without a collateral attack involving a hearing on matters outside the record, but left open the question whether such collateral attack may be made under Rule 35; 358 U.S. 415, at 422, 79 S.Ct. 451, at 455, 3 L.Ed.2d 407, at 411–12.

Accordingly, the court will consider the present petition as though it were a Rule 35 application to set aside an illegal sentence, and since the underlying facts seem not to be in dispute (see Motion, par. 13) no hearing to take testimony is required.

On the merits, then, the question is whether the imposition of a federal sentence consecutive to a state sentence, along with the lodging of a detainer with the state authorities, is a constitutionally invalid or illegal sentence on any of the grounds claimed.

It is claimed that the detainer against Tremarco of itself deprives him of eligibility for the various New York programs mentioned in the motion. There is no proof that it does; it may be that Tremarco has not been cleared for work release or training release for other reasons having nothing to do with the existence of the detainer. Tremarco had served only about 2 years of a 25 year sentence for violent state crimes when the federal sentence was imposed and the detainer lodged. He has now served perhaps 5 years. The court is not aware that any of these rehabilitative programs are a matter of entitlement of right. Ordinarily, educational and vocational training programs are limited to those provided within the prison itself until such time as the prisoner approaches the point of eligibility for parole, and if his record of behavior is a good one, he is then considered for eligibility for outside-the-walls programs. Even this is discretionary, and a matter of grace rather than of right.

The issue raised by Tremarco can arise the other way around: a prisoner in federal custody may have lodged against him a state detainer for a consecutive state sentence. The federal statute on this is 18 U.S.C. § 4085(a). This authorizes the Attorney General (in whose custody federal prisoners are placed) to transfer a federal prisoner to a state institution, "upon the request of the Governor or the executive authority" prior to the release of the prisoner, "if he finds it in the public interest to do so."

Thus, there is no authority, no binding legal obligation, on the Attorney General to continue custody of a federal prisoner beyond the date of his release from federal custody by reason of the lodging of the detainer. The detainer is nothing more than a request, a notice, that another jurisdiction claims custody of the prisoner at the time of his release. As a matter of comity and accommodation, but no more, the Attorney General (or prison officials) will give notice to the other jurisdiction of the date when the prisoner is scheduled for release, and it is up to the other jurisdiction to send an official to be there to take him in custody at release. Failing that, the Attorney General is free to "turn him loose" ___ in fact, he would have no legal ground to keep him in further custody ___ if the other jurisdiction fails to come to pick up the prisoner.

Programs of the type described in the motion as provided by New York also exist in the federal system. See 18 U.S.C. § 4082(c), dealing with leaves of up to 30 days to designated places, with extensions authorized to visit a dying relative, attendance at the funeral of a relative, obtaining medical services not otherwise available, contacting prospective employers, or other compelling reason consistent with the public interest [4082(c)(1)].

The prisoner may also be authorized to work at paid employment, or participate in a training program, on a voluntary basis in the community [4082(c)(2)].

Of course, wilful failure to remain within the extended limits of confinement, or to return at the time prescribed, is deemed an "escape" under 18 U.S.C. §§ 751 to 757, making it plain that while on leave, or work

release or training release, the prisoner is still legally within the institution's extended limits although not within its physical limits. For the administrative details of these programs, see the Federal Prison System Policy Statement, No. 7300.12D of 3–16–76.

Without attempting to research the laws of the 50 states and the District of Columbia, it is obvious that the basic structure and relationship is the same when a state prisoner has a federal detainer filed against him. The detainer form, USM–16, Rev. 1–2–68, (since replaced by DOJ Form LAA–121, 1–25–74) is issued by the U. S. Marshal to the head of the state institution, and merely requests that a detainer be placed against the prisoner and that the Marshal be advised of the release date in order that a deputy marshal may be present to take the prisoner in custody on the federal writ. See Appendix to this opinion for the full text.

■ This being the case, there is nothing about a federal sentence consecutive to a state sentence, or about a federal detainer, which has any legal effect whatever on the decision of state authorities to place a state prisoner in one or another state program. While he is in state custody, whether physically within a prison or in its extended limits under a program, the federal authorities have no voice or interest in the matter. Their only interest is to be notified of the eventual release date so that a deputy may be sent to take the prisoner into federal custody.

When an individual is found guilty of both state and federal offenses, it is a legitimate consideration in sentencing at the later occasion to impose a consecutive sentence for a number of sound reasons. One is that a defendant ought not to get to commit two crimes and only pay the price for one. Another, especially where the first sentence is an extended one, is that there is no way of forecasting what the performance and progress will be on the first sentence. If it is bad, the second consecutive sentence probably should be served if only to keep the offender out of society to neu-

tralize his threat to the community, a prophylactic measure. If the progress and performance is good, the second custody can be whatever the minimum is.

There is no legal reason why a state prisoner with a federal detainer should not be processed by state authorities in terms of rehabilitative programs in the same way he would be if there were no detainer. If performance and progress is good, the federal authorities may well designate a minimum security institution and continue programs parallel to the state programs, during federal custody.

■ If, on the other hand, the state authorities automatically deny the state programs to a state prisoner merely because there is a federal detainer filed, that would raise a question that could be challenged in a federal court whose district includes the state prison, under 28 U.S.C. § 2254, or proceedings in the state courts to the same end.

In sum, Tremarco's complaint, if valid, is one better addressed to the New York authorities, and not to this court under either 28 U.S.C. § 2255 or F.R.Crim.P. 35. So far as this court is concerned, the lodging of a federal detainer against a state prisoner is a matter to be wholly ignored by state officials in considering eligibility for various state programs. All that the detainer calls for, and it is a request honored only in comity and accommodation, is that when the prisoner is finally scheduled to be turned loose, the U. S. Marshal should be so informed so that he can send a deputy to take the prisoner into federal custody. Whatever is done before then is entirely for the state authorities to decide, as though there were no detainer.

## CONCLUSION

■ From an inspection of the motion and the files and records of the case, as well as from a consideration under F.R.Civ.P. 35, the court concludes that it appears conclusively that Tremarco is entitled to no relief, and that the challenged sentences are not

illegal or invalid on any of the grounds asserted. The motion is accordingly denied.

The foregoing opinion constitutes the court's findings of fact and conclusions of law.

SO ORDERED.

APPENDIX

Form USM–16
(Rev. 1–2–68)

DETAINER

UNITED STATES MARSHAL
Carl E. Hirshman, United States Marshal
Post Office Building, Newark, N.J. 07101

TO: _____
 _____
 _____

DATE:
RE:

We have a (warrant) (complaint) (commitment) for the above-named defendant who is reported to be in your custody.

Please place a detainer against this person for us, and advise this office of the release date in order that a deputy United States Marshal may be present to take him in custody on our writ.

If this subject is transferred from your custody before release to us is possible, please let us know the place of confinement and send this detainer on with your papers in the case.

Please acknowledge receipt of this detainer on the carbon copy attached and return same to me in the enclosed self-addressed envelope.

Thank you very much for your cooperation.

RECEIPT

Date Detainer Placed _____

Signed: _____

Earliest Release Date: _____

 Very truly yours,
 Carl E. Hirshman
 United States Marshal

 By: _____
 Supervisor