Collins JOHNSON, Petitioner,

v.

Ralph WILLIAMS, Warden and William F. Hyland, Attorney General of New Jersey, Respondents.

Civ. No. 79–612.

United States District Court, D. New Jersey.

Nov. 7, 1980.

David A. Ruhnke, Federal Public Defender, Newark, N. J., for petitioner.

Simon Rosenbach, Deputy Atty. Gen., Princeton, N. J., for respondents.

## OPINION

BIUNNO, District Judge.

Johnson has filed a petition under 28 U.S.C. § 2254, challenging a New Jersey sentence imposed March 26, 1976, to be served consecutively to a Maryland sentence then being served, which had been imposed June 1, 1963. He claims a violation of the Interstate Agreement on Detainers, to which both Maryland and New Jersey are party, see 18 U.S.C.App., and NJS 2A:159A–1, et seq. As a consequence, he seeks to have the sentence and conviction set aside and the indictment on which they were based dismissed with prejudice.

Johnson had been serving a 40 year Maryland sentence, imposed June 1, 1963, when he escaped on November 25, 1971 and became a fugitive. He evidently came to New Jersey, because he was arrested here on charges of crimes committed here after his escape. Three indictments resulted, Mercer County (N.J.) Nos. 1020–72, 1026–72 and 1027–72. These indictments were returned March 20, 1973.

On October 26, 1973, after conviction on No. 1020–72, Johnson was sentenced to 4 to 6 years and began to serve that sentence in New Jersey.

On December 22, 1975, Johnson was sent notice under the Agreement that a detainer had been filed by Maryland on an open escape warrant, and outlining the steps he could take. At the bottom of the form is a line reading: "I DO/DO NOT DESIRE TO FILE FOR A SPEEDY TRIAL." The phrase "DO NOT" was crossed out, and below it is a handwritten note reading, "Man refused to sign because he has a letter stating they didn't wish to prosecute him."

This note refers to the letter, dated June 27, 1974, in which Mr. Canter, an Assistant State's Attorney in Maryland wrote the Warden of Rahway State Prison, stating that "we do not wish to prosecute Mr. Johnson on our escape charge of 11/25/71."

There must have been some communication between Maryland and New Jersey officials, from which Maryland learned that while convicted and serving a sentence on No. 1020–72, trials remained to be held for the other two indictments. Maryland then wrote New Jersey to report that no trial was intended for the escape charge.

The letter went on to say that Johnson could be kept in New Jersey custody until all legal proceedings had been completed. Nothing suggests that Maryland ever requested temporary custody in order to bring Johnson to trial on the untried escape charge; although it did wish him returned to serve the remainder of his sentence.

After what are referred to as prolonged pretrial matters, the trial judge in Mercer County set successive peremptory trial dates for the remaining indictments, No. 1026–72 and 1027–72. Trial on No. 1026–72 began October 18, 1975, and on November 18, 1975, the jury returned a verdict of guilty.

On December 18, 1975, before sentence on No. 1026–72 had been imposed, the N.J. Parole Commission released Johnson on parole from his sentence in No. 1020–72, and

Johnson was delivered to Maryland to continue serving his interrupted 1963 sentence.

The record discloses no explanation for this event. Although bail had been set for No. 1026–72, and had not been posted, Johnson was released to Maryland. It does not appear whether the Parole Commission was aware of his fresh conviction, or that another indictment remained to be tried. Whatever the unexplained reason, the fact is that Johnson was released on parole after conviction and before sentence.

It is observed, at this point, that New Jersey's custody throughout that period was a custody not within the scope of the Agreement. New Jersey had custody, not as the result of a detainer filed with Maryland, followed by a request for temporary custody to dispose of untried charges, but because Johnson, then a fugitive, had himself come to New Jersey and committed crimes, for two of which he had been convicted, had been sentenced and paroled on one, was to be sentenced on the other, and the third remained to be tried.

After his arrival in Maryland, a formal indictment charging escape was filed on March 8, 1976. Arraignment was had March 18, 1976 and a plea of not guilty entered.

After being sent to Maryland, a detainer for Johnson was filed there on February 16, 1976, and a request for temporary custody was made March 19, 1976. He was accordingly returned to New Jersey *in temporary custody* under the Agreement, was sentenced on No. 1026–72 on March 26, 1976, and returned to Maryland on March 30, 1976. A detainer was filed for the service of the consecutive sentence imposed in No. 1026–72.

After his return to Maryland on March 30, 1976, the escape charge was called for trial on April 19, 1976. The Public Defender entered his appearance. The State then moved to nolle prosse the indictment, and the motion was granted. Johnson then remained in Maryland custody, subject to detainer for serving the sentence here in No. 1026–72. This process carried out in formal records of the court the representation in

the June 12, 1974 letter, that Maryland did not wish to prosecute the escape charge. The indictment was formally filed, pleaded to and then nolle prossed.

In December, 1979, Johnson was paroled by Maryland and delivered to New Jersey, not for trial of untried charges, but to serve his consecutive sentence in No. 1026–72. The charge on No. 1027–72 was dismissed (Tr. 8/25/80, p. 7, line 13).

No doubt it would have been preferable not to parole Johnson in December, 1975 until sentence in No. 1026–72 had been imposed. However, this event, and the later detainer and request for temporary custody, during which Johnson was sentenced (well within the 120 day period) was the *only* detainer and request by New Jersey that comes within the Agreement.

■ As noted by the Supreme Court in analyzing the Agreement in *U. S. v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the term "detainer" as used in the agreement does not embrace all detainers, but only those "advising that [a prisoner] is wanted to face *pending* criminal charges." 436 U.S. at 359, 98 S.Ct. at 1846. Detainers lodged to obtain custody for the purpose of serving a sentence are not within the scope of the Agreement at all. See the discussion of that kind of detainer in *Tremarco v. U. S.*, 412 F.Supp. 550 (D.N.J.,1976). In that case Tremarco, then in N.Y. prison on a 25 year sentence, was brought to this court for trial on federal charges, convicted and sentenced. The sentence was consecutive to the New York sentence, and he was accordingly remanded to New York, and a federal detainer filed so that the U.S. Marshal could take custody when he was released from New York custody, to serve the consecutive federal sentence.

As a reading of the Agreement will disclose, its entire theme is directed to detainers and requests for temporary custody so that final disposition can be made of untried charges. It does not encompass detainers to serve consecutive sentences.

■ Since New Jersey's custody until the parole release of December 18, 1975 was its own custody and not pursuant to the Agreement, it follows that the 1976 detainer and request for temporary custody, during which sentence was imposed, was New Jersey's only action within the Agreement, and it was in compliance with its terms.

The second detainer filed to obtain custody for service of Johnson's consecutive sentence is of the *Tremarco* type, and is outside the agreement.

Johnson asserts a number of other challenges to the conviction in No. 1026–72. The first of these is that the court allowed the jury to hear evidence of "other crimes" from the State's key witness Freeman, who had pleaded guilty and turned State's evidence. The argument is, in substance, that the combination of Freeman's testimony that he committed some 12 robberies besides the two on trial, that he had accomplices, and that Johnson was an acquaintance, prejudiced the jury.

This testimony was elicited during Freeman's cross-examination by the attorney for co-defendant Whipple, presumably in an effort to attack his credibility by showing the benefits gained. In the course of the testimony, the trial judge clearly cautioned the jury that there was no indication in the record that either Johnson or Whipple were involved in any armed robberies other than the two being tried. [See 7 TR, 415].

■ This is not a constitutional issue. At most it is a claim of trial error which is not reviewable here unless so conspicuously prejudicial as to deprive defendant of a fair trial. *Carter v. U. S.*, 373 F.2d 911 (CA 3, 1967).

■ The subject was a proper one for challenging Freeman's credibility, and the judge cautioned the jury that there was no evidence against the two defendants of any robberies other than the two on trial. The argument is nothing more than unfounded speculation that the jury disregarded the instruction given. See *U. S. v. Restaino*, 405 F.2d 628 (CA 3, 1968), *cert. den.* 394 U.S. 904, 89 S.Ct. 1012, 22 L.Ed.2d 216 (1969), quoting from *Opper v. U. S.*, 348 U.S. 84, at 95, 75 S.Ct. 158, at 165, 99 L.Ed. 101 (1945).

After full review of the record, the court finds that the testimony challenged was not so conspicuously prejudicial as to amount to a deprivation of a fair trial.

Johnson's next point is that he was prejudiced when a witness said he had seen the two defendants in the courthouse hallway "cuffed together" (12 Tr 575–3 to 13 Tr 585–6), and a motion for mistrial was denied. The matter must be put in context. During cross-examination of an eyewitness at the robbery, questions were asked whether he had seen the co-defendants together at any time since the robbery, and he said he had "Thursday, when I was waiting outside to . . ." (evidently in the course of a *Wade* hearing), when the witness had been called to testify. He was then asked what observations he made about them, "what did you see?" The prosecutor objected and explained at sidebar that he did not know whether they were handcuffed at the time. Counsel was directed to lead the witness to avoid the "pitfall". After further questions that he did not see them standing together, but saw them walking, counsel asked: Q: "You saw them walking, and were they together?" A: "Yes, they were cuffed together." Further questioning continued but the subject did not come up again. At the next sidebar, called for a different discussion, Johnson's attorney moved for mistrial on the ground that the testimony was prejudicial, and the motion was denied. The court said it did not consider it so prejudicial as to require a mistrial.

Even when jurors themselves see a defendant in handcuffs, it has been ruled that this is not so prejudicial as to command a mistrial, *U. S. v. Chrzanowski*, 502 F.2d 573, at 576 (CA 3, 1974). The granting or denial of a mistrial is ordinarily discretionary, depending on the trial court's appraisal of probable effect on a fair trial. There has been no showing here that it is strikingly clear that a fair trial could not have been had in all the circumstances. This is also the New Jersey rule. See *State v. Di Rienzo*, 53 N.J. 360, at 383, 251 A.2d 99 (1969); *State v. Jones*, 130 N.J.Super. 596, 328 A.2d 41 (Law, 1974).

Accordingly, this ground is insufficient to support issuance of the writ.

Finally, it is claimed that the court improperly denied a motion for separate trial of the two robberies charged in the indictment.

Joinder of offenses is allowed if they are of the same or similar character, N.J. Court Rule R. 3:7–6. A motion for severance under N.J. Court Rule R. 3:15–2 is addressed to the court's discretion.

In discussing the same point on the co-defendant's appeal, the Appellate Division noted that the two robberies were clearly part of a common plan or scheme, evidenced by the fact that after the first robbery the money was hidden and defendants immediately committed the second robbery. See *State v. Whipple*, 156 N.J.Super. 46, 383 A.2d 445 (App.1978), incorporated by reference in ruling on Johnson's appeal. The record of the trial shows that five prosecution witnesses were essential to the proof of both robberies, that the robberies were committed within an hour of each other, that both targets were liquor stores, and that the same gun was used.

There is no clear showing that the joint trial precluded a fair trial or made such a trial unlikely. The instructions made clear that the jury was to consider each charge and each defendant separately. Joinder can rise no higher than a question of law involving the exercise of the trial court's discretion. Failure to persuade the trial and appellate courts otherwise does not make habeas available as a further appellate step. *Torrance v. Salzinger*, 195 F.Supp. 804, at 807–808 (D.Pa.,1961), *affd.* 297 F.2d 902 (CA 3, 1962).

No requisite showing having been made, this claim is insufficient to support the writ requested.

Finally, it should be observed that while the joinder of Williams, the Maryland warden, was proper at the time the petition was filed in view of Johnson's custody then, see 28 U.S.C. § 2254, Rule 2(b) (Pub.L. 94–426), the later parole by Maryland and

Johnson's transfer to New Jersey to serve the formerly "future sentence" ends any reason for continuing Williams as a respondent. No challenge was directed to the Maryland sentence, even though Johnson may be required to serve some part of it in the future in the event he violates a condition of parole.

Accordingly, the petition will be denied in respect to New Jersey, and dismissed as to Maryland.