**Claude MADDEN, Petitioner,**

v.

**Walter FOGG, Superintendent at Eastern New York Correctional Facility, Napanoch, N. Y. and The Attorney General of the State of New York, Robert Abrams, Respondents.**

**No. 80 Civ. 4709(MP).**

United States District Court, S. D. New York.

Nov. 10, 1980.

Claude Madden, petitioner, pro se.

Robert Abrams, Atty. Gen., of New York, New York City, for respondents by Gerald J. Ryan, Asst. Atty. Gen., New York City, and Richard S. Lurye, Forest Hills, of counsel.

## OPINION

MILTON POLLACK, District Judge.

Petitioner, in state custody, seeks a writ of habeas corpus under 28 U.S.C. § 2254 claiming that his Fourth, Fifth, Sixth and Fourteenth Amendment rights were violated in respect to his arrest, seizure, search, identification and trial. A careful review of the state court proceedinigs establishes clearly that there is no merit in any of these claims.

Petitioner was tried and found guilty by a jury in Supreme Court, New York County, of robbery, criminal possession of weapons and of stolen property. He received concurrent sentences of a maximum of twenty–five years for the robbery count, six years for the weapons count and three years for the stolen property count. On appeal the stolen property count was held as a matter of law to be subsumed in the robbery count and was dismissed and the three year sentence thereon was vacated with the express finding that the dismissal was not to be deemed an acquittal thereon. In all other respects the conviction was affirmed. Leave to appeal was denied by the Court of Appeals. Petitioner is serving

his sentences at the Eastern New York Correctional Facility at Napanoch, New York.

The facts answer each of the grounds asserted for relief on this application. Petitioner is proceeding Pro Se hereon but was at all relevant times theretofore represented by counsel.

At about 3 o'clock in the morning on February 23, 1976 police officers came upon the petitioner and three others engaged in an argument; one of them was making "menacing" gestures. The police drove off a short distance and then doubled back, stopped and inquired where one of the four, then missing from the group, was. The petitioner explained that the latter was armed with a gun and had been "looking to rip me off." As they talked, the police officer noticed that petitioner kept "flinching" and twisting his right hand, and the police officer noticed something shiny in petitioner's hand which was covered by his coat sleeve and asked what it was and petitioner responded "It's a knife" (petitioner claims that the knife was in his coat sleeve, not his hand). Upon hearing this, the officer took out his handgun and took the knife away from petitioner. The knife was 12 inches long and was described as a "gravity" knife, i. e., one which can be opened with one hand by the force of gravity and then locks into place—clearly a deadly weapon.

The police arrested petitioner for possession of such a knife, took him into the station house where he was searched incident to the arrest and was found in possession of credit cards, a driver's license and miscellaneous papers belonging to one, George Morano. A check of police records showed that George Morano had reported he had been robbed and his credit cards stolen on the previous day. Petitioner was booked on the knife charge. Prior to actual arraignment thereon, on instructions from the Assistant District Attorney, the police decided to investigate whether petitioner was involved in robbery from George Morano. Mr. Morano was called in to view a "possible suspect". Carl Ellis, another victim of the same robbery was also called in for the viewing.

Petitioner, a black, and five other black males participated in the line-up. Since petitioner was not as tall as the others, all six men were seated during the viewing. Messrs. Morano and Ellis, in turn, looked at the line-up through a one-way mirror while the other stood two feet away. Then, Morano and Ellis separately picked out Madden as the man who had committed a robbery on them at gunpoint. The robbery had been committed 36 hours prior to the line-up and both victims had had an excellent opportunity to see petitioner during its course as they were face-to-face with him during the encounter which took place in a well-lit area. Petitioner was then booked on robbery, arraigned, indicted, and pleaded; he was represented by counsel at each step.

At an omnibus suppression hearing held before trial, the state court determined that the seizure of petitioner by the police was proper; that the station house search was properly incident to a lawful arrest; that the line-up was not impermissibly suggestive; and that the line-up was in the course of police investigation of a reported robbery and prior to booking him thereon and consequently petitioner had no right to counsel at such a line-up; and that there was no bad faith purpose in having petitioner viewed as a "possible suspect" prior to being charged and arraigned on a robbery charge; nor any undue delay thereof with a purpose to deprive petitioner of his Sixth Amendment right to counsel. Self-evidently a prompt line-up attempt to ascertain any connection of petitioner with the earlier robbery in addition to the gravity knife charge was in order in the circumstances to preserve reliable evidence and to determine the proper charges to be filed against petitioner.

Petitioner proceeded to trial on September 30, 1976 but a mistrial was declared before a 12th juror was selected and before the jury was empanelled and sworn. Subsequently a second jury trial was commenced and the trial resulted in the conviction of petitioner.

On appeal to the Appellate Division, petitioner unsuccessfully argued that 1) his guilt of robbery was not proved beyond reasonable doubt; 2) the seizure on February 23 and the incidental search thereafter, were improper; and 3) the line–up was impermissibly suggestive. These factual claims are unsupported in the record and furnish no basis for relief on this application.

In addition to the foregoing, the petitioner unsuccessfully raised the following additional legal matters on his appeal, viz., 4) that he had a right to counsel at the line–up; 5) that the mistrial at the first attempt to draw a jury resulted in Double Jeopardy; 6) that he was deprived of a fair trial by the joinder of the gravity knife and robbery charges; and 7) that the court reporter having failed to take down the latter portion of the defense counsel's summation deprived petitioner of due process.

The law applicable to petitioner's request for habeas corpus is settled and affords no relief hereon.

■ The evidence of petitioner's guilt was ample for conviction on the robbery and weapons charges and so found by the state courts. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979); *see, also*, Section 160.15 N.Y. Penal Law (McKinney). The results of the omnibus suppression hearing are amply supported on review of the facts in the record. Since a full and fair opportunity was provided by the state to litigate petitioner's Fourth Amendment claims, habeas corpus is not available to challenge evidence introduced at trial on the claim of an unconstitutional search or seizure. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

■ The line–up identification occurred during the preliminary police investigation of a reported robbery which occurred on the previous day, in order to preserve evidence and to determine whether and on what crimes petitioner should be charged and prior to any adversary judicial proceedings. Petitioner therefore had no federal right to counsel at that stage. In *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) the Supreme Court drew the line that Sixth Amendment right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated" *Id.* at 688, 92 S.Ct. at 1881. Examples of that time were mentioned as "formal charge, preliminary hearing, indictment, information or arraignment" (*Id.* at 689, 92 S.Ct. at 1882). None of those points had been reached herein in respect to the ultimate robbery charges. The identification was fully reliable. *See, Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, at 199, 93 S.Ct. 375, at 382, 34 L.Ed.2d 401 (1972). The state court likewise found against petitioner's contention under state law in rejecting this contention.

The additional legal contentions also are wanting in substance.

■ Double jeopardy did not attach until a jury had been empanelled and sworn. *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975).

■ The joinder of the robbery charge with the weapon charge raised no federal question. Such joinder is expressly permissible. N.Y.Crim.Proc.Law §§ 200.20(2)(b) and (c) (McKinney). The evidence sufficiently permitted the jury to find possession of the weapons, the gun and the knife, as charged in the indictment, at the time of the robbery. Joinder and severance are questions left to the discretion of the trial judge; no constitutional question is involved.

■ The omission by the reporter to record a portion of the summation of the defense counsel and the fact that minutes of defense counsel's total summation were missing on the appeal raise no question here since no claim based on the content thereof is asserted as having prejudiced the defendant. The jury heard the defense summation. The defense attorney was not hampered on appeal by the absence of a record of some of his argument to the jury; he was free to recount his arguments if they

were applicable on appeal. *Cf. People v. Glass*, 43 N.Y.2d 283, 286, 401 N.Y.S.2d 189, 372 N.E.2d 24 (1977).

The petition is in all respects, denied. So ordered.