**David SHAW, Petitioner,**

v.

**Charles SCULLY, Superintendent, Green Haven Correctional Facility, Stormville, New York, and Robert Abrams, Attorney General of the State of New York, Respondents.**

**No. 85 Civ. 7565(RJW).**

United States District Court, S.D. New York.

Jan. 13, 1987.

David Shaw, pro se.

Mario Merola, Dist. Atty., Bronx County, Bronx, N.Y., for respondents; Jeremy Gutman, Asst. Dist. Atty., New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Petitioner David Shaw pleaded guilty to five counts of Robbery in the First Degree in 1980. He now petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition challenges the trial court's decision not to suppress evidence and identifications that followed from his warrantless arrest and that eventually led to his guilty plea. In addition, he contends that he was deprived of effective assistance of counsel. For the reasons hereinafter stated, the Court denies the petition.

## BACKGROUND

A. Facts.

Petitioner challeges a judgment entered October 29, 1980 in the Supreme Court of New York, Bronx County, (Grey, J.), on his plea of guilty to five counts of Robbery in the First Degree, *see* N.Y. Penal Law § 160.15.

During December 1979, Detective Taylor began investigating a series of armed robberies that had occurred at retail food stores in the Bronx. James Preston, a suspect in the robberies, told Taylor that "Dave" who lived at 168th Street and Third Avenue in the Bronx was responsible for the robberies. After determining the last name of this second suspect by interviewing the landlord of the apartment building, Taylor ordered photographs of David Shaw, the petitioner. On January 17, 1980, an employee of a store that had been robbed about a month earlier picked Shaw's photograph out of an array. On January 24, 1980, Police Officer Cote and

Detectives Taylor, Schudde and McGary traveled to the apartment in the Bronx where Shaw resided.

The parties dispute the circumstances of Shaw's arrest at the apartment. Respondents contend that Detective Taylor knocked on the apartment door and announced that he was a police officer. One of the apartment's occupants supposedly came to the door and looked through the peephole. Detective McGary, who had been stationed on the roof, then alerted the others that petitioner had escaped through a rear window and was climbing a fire escape to the roof. McGary arrested Shaw on the roof. Shaw contends, by contrast, that the police forced their way into the apartment. Pam Milton, the lessee of the apartment, testified that petitioner looked out the door, walked back to the bedroom and fled the apartment. She admitted that the detectives arrested Shaw outside the apartment. By Milton's account, however, the police forced the apartment door open. William Prince, the building superintendent testified that he repaired the door several days after the incident by replacing a pin in the door hinge.

Following his arrest, Shaw was advised of his constitutional rights and taken to the precinct house to be interviewed by Detective Mockler. Mockler again read appellant his *Miranda* warnings. During this questioning, Shaw admitted having robbed a McDonald's restaurant, but he denied involvement in any of the robberies under investigation. Three robbery victims subsequently identified petitioner in a lineup.

Before trial, Shaw moved to suppress the statements he had made to Mockler and to strike proposed identification testimony on the ground that they were the tainted products of an unlawful arrest. On September 15 through September 20, Justice Grey held an omnibus hearing on Shaw's motions. In a written decision, the judge held that the photographic identification procedure employed by the police in soliciting information concerning the rash of robberies was not suggestive and furthermore that the prospective in-court identification of Shaw rested on an independent source. The trial judge also held that Shaw's arrest was constitutional because the police had apprehended him on the roof of the apartment building. After failing to have the identifications and other evidence suppressed, Shaw pleaded guilty to five counts of Robbery in the First Degree. On the basis of a plea bargain Shaw was sentenced to an indeterminate term of imprisonment of from four and one-half to nine years.

### B. Procedural History.

The New York Supreme Court, Appellate Division, First Department, unanimously affirmed without opinion petitioner's conviction on December 3, 1981. *People v. Shaw*, 85 A.D.2d 934, 447 N.Y.S.2d 571 (1st Dep't 1981). On February 24, 1982, the New York Court of Appeals denied leave to appeal. *People v. Shaw*, 55 N.Y.S.2d 1045, 449 N.Y.S.2d 1038, 434 N.E.2d 1089 (1982). Petitioner then filed his first application for a writ of habeas corpus in the district court for the Northern District of New York. At petitioner's behest, the district court dismissed the petition without prejudice on June 23, 1983. Shaw next filed a motion in state court to vacate judgment pursuant to N.Y.Crim.Proc. Law § 440.10. That motion was denied in all respects on the merits on September 27, 1983. The New York Supreme Court, Appellate Division, First Department denied Shaw permission to appeal the order denying the motion to vacate judgment. On December 29, 1983, the Honorable Matthew J. Jasen certified that the December 8, 1983 decision by the Appellate Division was not appealable.

Following the final denial of his motion to vacate judgment, Shaw filed the instant petition for a writ of habeas corpus. He alleges first that the trial court admitted tainted evidence that had been seized after his warrantless, and henceforth unlawful, arrest in violation of the Fourth Amendment and secondly that he was deprived of effective assistance of counsel at both the

trial and appellate stages of his prosecution.[1]

## DISCUSSION

Application for habeas corpus relief may not be addressed on the merits by a federal court until the petitioner has exhausted available state court remedies. *See Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).[2] The Second Circuit Court of Appeals has defined what constitutes "exhaustion" in the context of federal habeas corpus petitions.

> The exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court.

*Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc*) (citations omitted). In *Daye,* the Second Circuit held that a claim may be viewed as having been fairly presented to the state courts "even without citing chapter and verse of the Constitution" if the state court application includes

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is

well within the mainstream of constitutional litigation.

696 F.2d at 194.

As noted above, petitioner here raises two constitutional issues. He asserts that the trial judge misapplied *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and thereby violated his Fourth and Fourteenth Amendment rights when he refused to suppress the statement and identifications that followed and flowed from his arrest, which he contends, was illegally effected without a warrant in the absence of exigent circumstances. He contends as well that he was deprived of effective assistance of counsel, both at the trial stage and on direct appeal of his conviction. On appeal to the Appellate Division, First Department, Shaw challenged the trial judge's summary disposition of *Payton* on the supposedly technical distinction that defendant was arrested not in the apartment but on its roof. Memorandum on Behalf of Defendant-Appellant at 4, *People v. Shaw, supra* ("Petitioner's Brief to the Appellate Division"). Petitioner, therefore, has properly presented the New York state courts with the first claim he now argues and faces no exhaustion bar. Petitioner presented the ineffective assistance of counsel claim in constitutional terms to the state courts in his motion to vacate his conviction. *See* Affidavit of Assistant District Attorney Jeremy Gutman Ex. 4 (sworn to March 26, 1986) (Shaw's Affidavit in Support of Motion to Vacate Judgment under C.P.L. § 440.10, sworn to July 18, 1983). In deciding the motion, Justice Grey passed on the ineffective as-

---

1. Shaw made no claim of ineffective assistance of counsel in his habeas corpus petition. In a second submission, dated August 2, 1986, Shaw did raise the additional contention that he was not afforded a full and fair opportunity to litigate his search and seizure claim for lack of effective assistance of counsel at both the trial and appellate levels. Inasmuch as Shaw did make that claim in his subsequent submissions, the Court will liberally construe the petition itself and the subsequent submission under Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts as presenting a claim of ineffective assistance of counsel. *See White v. Wyrick,* 530 F.2d 818 (8th Cir.1976).

2. The requirement that a person in state custody must exhaust his state remedies as a predicate to instituting an application for federal habeas relief is codified at 28 U.S.C. § 2254(b). In relevant part, the section provides:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State. . . .

sistance of counsel claim, which he deemed to be "unsubstantiated." *See* Gutman Aff. Ex. 6. On December 8, 1983, the Appellate Division, First Department denied Shaw leave to appeal from the order denying his motion to vacate his conviction. The Honorable Matthew J. Jasen certified that petitioner could not appeal the decision of the Appellate Division on December 29, 1983. Shaw thus has exhausted the ineffective assistance of counsel claim in the state courts. That claim, as liberally construed, is therefore also properly before this Court on the merits.

### A. *Stone v. Powell.*

Having reviewed the record, and petitioner's arguments, the Court concludes that whatever the underlying merits of petitioner's argument that his arrest was unlawful on the basis of *Payton v. New York, supra,* the doctrine of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars the Court from considering his claim. To the extent petitioner urges this Court to review on the merits the New York court's decision of his Fourth Amendment claim, petitioner misperceives this doctrine.

In *Stone v. Powell,* the United States Supreme Court held that "the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial," so long as "the State has provided an opportunity for full and fair litigation of [the] Fourth Amendment claim." 428 U.S. at 482, 96 S.Ct. at 3046; *see Jackson v. Scully,* 781 F.2d 291, 297 (2d Cir.1986); *McPhail v. Warden, Attica Cor-*

*rectional Facility,* 707 F.2d 67, 69 (2d Cir. 1983); *Nelson v. Smith,* 618 F.Supp. 1186, 1191 (S.D.N.Y.1985).

The focus of *Stone v. Powell* is the word "opportunity." If the state provides no procedure for defendants to redress Fourth Amendment violations, federal habeas corpus remains available. If, however, the state by enacting a statutory mechanism for the suppression of evidence obtained by unlawful search and seizure, has provided an opportunity fully and fairly to litigate Fourth Amendment issues, the federal courts may not reexamine those issues on habeas corpus review. *McPhail v. Warden, Attica Correctional Facility, supra,* 707 F.2d at 69.

When the state provides a facially adequate procedure, a petitioner cannot gain review of a Fourth Amendment claim simply by arguing that the federal court would have reached a different result. *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978) *(en banc);* *Foran v. Metz,* 463 F.Supp. 1088, 1992–93 (S.D.N.Y.) *aff'd,* 603 F.2d 212, (2d Cir.), *cert. denied,* 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 38 (1979) (federal court may not characterize erroneous outcome of state court procedure as "unfair" in order to reach Fourth Amendment claim) *United States ex rel. Carbone v. Manson,* 447 F.Supp. 611, 616 (D.Conn.1978) (no authority to hear Fourth Amendment claim despite petitioner's contentions that Connecticut Supreme Court applied incorrect standard of review, improperly deferred to trial court, and did an about face on its original holding inasmuch as claim had been litigated twice in the trial court and twice on appeal).[3] Rather, to

---

**3.** In *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir.1978), the circuit panel upheld an order granting a writ of habeas corpus on the basis of a Fourth Amendment violation despite the state's contention that *Stone v. Powell* barred consideration when it found that the Oklahoma courts had utterly refused to apply a recent Supreme Court ruling directly appliable to the facts of the case. The court reasoned that it was "not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court willfully refuses to apply

the correct and controlling constitutional standards." *Id.* at 1165. Although several decisions have expressed support for that holding on its facts, *see e.g., Grimsley v. Dodson,* 696 F.2d 303, 307 (4th Cir.1982), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3118, 77 L.Ed.2d 1371 (1983), (Ervin, J., concurring) (finding *Gamble* "highly persuasive" but inapplicable); *United States ex rel. Maxey v. Morris,* 591 F.2d 386, 390 (7th Cir.), *cert. denied,* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979) (distinguishing *Gamble* ), the circuit courts, along with the Second Circuit,

gain federal review, petitioner must demonstrate an unconscionable breakdown in the otherwise adequate process. *Gates v. Henderson, supra,* 568 F.Supp. at 840; *Allah v. LeFevre,* 623 F.Supp. 987, 990–91 (S.D.N.Y.1985).

New York provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial. *See* N.Y. Crim. Proc. Law § 710. In light of New York's procedure, then, federal scrutiny of Shaw's Fourth Amendment claims is not warranted unless he demonstrates that he was in fact precluded from utilizing it by an unconscionable breakdown in the review process.

Neither *Gates* nor subsequent decisions within the Second Circuit has greatly elaborated the standard of unconscionable breakdown. The citation within *Gates* to *Frank v. Mangum,* 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (Holmes, J. and Hughes, J., dissenting), a case in which the Supreme Court refused to grant a writ of habeas corpus to a petitioner convicted of murder in a state court proceeding alleged to have been dominated by an angry mob, does point out the degree of disruption or obstruction of a state proceeding required before a federal court may hear a Fourth Amendment claim despite the availability of a facially adequate state procedure. In *Cruz v. Alexander,* 477 F.Supp. 516 (S.D.N.Y 1979), Judge Sweet found such a breakdown when, through a series of mischances, neither the New York Supreme Court at trial nor the New York Court of Appeals on review ever addressed the merits of the Fourth Amendment claims petitioner had tried to assert throughout.[4] Judge Sweet distinguished this instance, where petitioner could prove that no state court had conducted a "reasoned method of inquiry into relevant questions of fact and law," or any inquiry at all, from other Second Circuit cases that precluded review because petitioner had had available and had taken advantage of an opportunity for full and fair litigation.[5] *Id.* at 523.

have uniformly rejected under various formulations any implication that the federal courts may disregard *Stone v. Powell* over serious disagreement with the state court decision. *See Sonnier v. Maggio,* 720 F.2d 401, 409 (5th Cir. 1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984) (error of law, even on constitutional issue, does not vitiate opportunity for full and fair litigation); *Grimsley v. Dodson, supra,* 696 F.2d at 304–305 (once determination made that opportunity for full and fair consideration "was not impaired," district court should inquire no further into merits); *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir.), *cert. denied,* 459 U.S. 948, 103 S.Ct. 266, 74 L.Ed.2d 207 (1982) (agreeing that error in Fourth Amendment application of the magnitude of that in *Gamble* might not be full and fair opportunity, but declining to approve limited inquiry into state decisions as a matter of course); *Palmigiano v. Houle,* 618 F.2d 877, 882 (1st Cir.), *cert. denied,* 449 U.S. 901, 101 S.Ct. 272, 66 L.Ed.2d 132 (1980), (error in state court's decision is not a denial of full and fair litigation); *United States ex rel. Maxey v. Morris, supra,* 591 F.2d at 390 (mere fact that constitutional holding of the state courts may differ from what the federal court would decide does not entitle petitioner to a writ of habeas corpus); *Mack v. Cupp,* 564 F.2d 898, 902 (9th Cir.1977) (error in state appellate review of a Fourth Amendment claim does not necessarily justify habeas relief in the federal courts); *Hines v. Auger,* 550 F.2d 1094, 1099 (8th Cir.1977) (federal courts may not sec-

ond guess state courts on "murky questions of fourth amendment probable cause").

4. The state trial court first refused to order the government to confirm or deny whether it had conducted a wiretap against the petitioner. The court next declined to consider the Fourth Amendment claim before trial as premature and subsequently refused to consider it after trial on a motion to vacate the sentence, claiming that an appellate court could decide his claims on the basis of the record. The Appellate Division denied petitioner leave to appeal the denial of his motion. The New York Court of Appeals affirmed petitioner's conviction, apparently on the mistaken belief that the trial court had decided the motion to vacate on the merits. When petitioner moved for reargument on the ground that the trial court had not denied his motion as the opinion by the Court of Appeals had assumed, the Court of Appeals deleted the portion of the opinion that had indicated the misimpression. Neither the trial nor the appellate courts, then, ever addressed the merits of the wiretap claim. 477 F.Supp. at 522–23.

5. Petitioner need not have actually litigated a Fourth Amendment claim to be barred by *Stone v. Powell.* Failure to make a timely Fourth Amendment objection under the available state process operates as a procedural bar under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), unless petitioner can

In this case, Shaw availed himself of the procedure to attack the legality of his arrest under *Payton v. New York, supra,* at a pretrial suppression hearing under section 710 of New York's Criminal Procedure Law, *see* Omnibus Hearing Transcript at 35, 52, 57–61, 109–112, 151, 187A–192, 200–216 (Grey, Justice) ("Tr."), on direct appeal, *see* Petitioner's Brief to the Appellate Division at 4, 9–15, and in his motion to vacate the sentence. In further submissions to the Court dated May 27, 1986 and July 30, 1986, petitioner nonetheless urges the Court to disregard the doctrine of *Stone v. Powell* since the lack of effective trial or appellate counsel deprived him of a full and fair hearing on his Fourth Amendment claim in the state courts. Where petitioners have either taken advantage of an opportunity to present Fourth Amendment claims or deliberately bypassed the procedure, however, courts within this circuit have refused to equate ineffective assistance of counsel with unconscionable breakdown. *Jackson v. Scully,* 781 F.2d 291, 297 (2d Cir.1986); *see Allah v. Lefevre, supra,* 623 F.Supp. at 991–92; *Foran v. Metz, supra,* 463 F.Supp. at 1092–93. It is therefore beyond question that under *Stone v. Powell,* this Court may not review the merits of petitioner's Fourth Amendment claim. Consequently, the Court denies petitioner's first ground for habeas corpus relief.

## B. Ineffective Assistance of Counsel.

While the Court may not sidestep *Stone v. Powell* by equating ineffective assistance of counsel with unconscionable breakdown, it may nonetheless consider the ineffective assistance claim independently. In its recent decision in *Kimmelman v. Morrison,* —— U.S. ——, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), the Supreme Court rejected arguments that *Stone v. Powell* bars Sixth Amendment ineffective assistance of counsel claims premised on counsel's failure to raise Fourth Amendment objections.[6] That decision negates the alternative holding of the Second Circuit in *LiPuma v. Commissioner, Department of Corrections, State of New York,* 560 F.2d 84, 93 n. 6 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977), that a claim ostensibly grounded on the Sixth rather than the Fourth Amendment did not negate the applicability of *Stone v. Powell.*

While petitioner may thus raise the claim, to prove incompetence and prejudice, he must overcome the strong presumption

demonstrate cause and actual prejudice. *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Smart v. Scully,* 787 F.2d 816, 818 n. 3 (2d Cir.1986); *see Murray v. Currier,* —— U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Smith v. Murray,* —— U.S. ——, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

**6.** The Supreme Court rejected the two arguments made by the state first that petitioner was in fact litigating a defaulted Fourth Amendment claim in the guise of the Sixth Amendment and second that even if the Sixth Amendment claim was distinct, the rationale and purposes of *Stone v. Powell* applied fully to ineffective assistance claims premised on failure to make Fourth Amendment objections. Justice Brennan reviewed the essence of a Fourth Amendment complaint, the violation by an illegal search of a complainant's legitimate expectation of privacy, and the elements required to prove a violation, an illegal search and a legitimate expectation of privacy in the thing or place searched. He compared that with the essence of a Sixth Amendment violation, that defense counsel's unprofessional errors rendered the trial unfair and the verdict suspect, the proof of which requires showing representation that fell below objective standards of professionalism and prejudice resulting from the reasonable probability that but for counsel's unreasonable errors, the result would have been different. —— U.S. at —— ——, 106 S.Ct. at 2582–83. Justice Brennan concluded that "while respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values." *Id.*

The Court next distinguished the Fourth Amendment violation remedy of exclusion, which is not a personal constitutional right, from the fundamental right of an accused to counsel. In refusing to extend the rationale of *Stone v. Powell,* the Court observed that "while the Court may be free, under its analysis in *Stone,* to refuse for reasons of prudence or comity to burden the State with the costs of the exclusionary rule in contexts where the Court believes the price of the rule to exceed its utility, the Constitution constrains our ability to allocate as we see fit the costs of ineffective assistance." *Id.* at ——, 106 S.Ct. at 2585.

that his counsel's performance, at both the trial and appellate levels, fell within the "wide range of professional assistance." *Kimmelman v. Morrison, supra,* — U.S. at ——, 106 S.Ct. at 2586 (quoting *Strickland v. Washington,* 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)). Under this test, incompetence means that by prevailing professional norms, petitioner's representation must have been unreasonable and that the challenged action was not sound strategy. *Strickland v. Washington, supra,* 466 U.S. at 688–89, 104 S.Ct. at 2065–66. The standard of review is highly deferential; the alleged error must be evaluated in light of all the circumstances and in view of counsel's perspective at the time of the alleged error. *Id.* To satisfy the second prong of resulting prejudice, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068; *Cuevas v. Henderson,* 801 F.2d 586 (2d Cir.1986).

The sole instance of trial counsel's alleged incompetence that petitioner argues is that he did not effectively assist in the investigation and preparation of his defense or argue *Payton v. New York, supra,* at the suppression hearing, thereby failing to preserve the claim for appeal. While a single grievous error, such as failing to seek suppresison of the contested evidence that prompted a guilty plea, might support a claim of ineffective assistance, the Court need not consider that argument. The transcript of the suppression hearing belies petitioner's assertion that counsel never argued *Payton.* Counsel cross-examined each of the participating police officers who testified about the circumstances of Shaw's arrest to lay the foundation for an argument based on *Payton. See* Tr. at 35, 57–61, 109–112, 151, 187A–192. After recapitulating the hearing testimony, counsel argued before Justice Grey that *Payton* applied on the circumstances of petitioner's arrest, that the evidence that flowed from the allegedly unlawful arrest should be suppressed, and that *Payton* applied retroactively to petitioner's arrest.[7] The prose-

7. The argument, in relevant part, proceeded as follows:

Accepting that testimony, the police then waited a full week until January 24, 1980, at 5:30 in the morning to make this raid and arrest of the defendant, and of course, the testimony is clear that no warrant was obtained between January 17, 1980, when probable cause certainly existed to the date of the arrest which was January 24, 1980.

Pamela Milton testified that the front door of her apartment, 4F was kicked open by the police subsequent to this knocking and apparently Mr. Shaw went to the door and then sometime thereafter, the front door of the apartment was kicked open by the police officers. That was basically her testimony and there's nothing in the record to controvert that testimony. The only police testimony was that the officers that were there at the front door stated that they heard someone—another officer call from the roof and he left the door and went towards the roof which would be up several stories and that he doesn't really know how the door was opened. The superintendent who testified today corroborated Pamela Minton's testimony in that he indicated that he was asked to make a repair the end of January and he did make a repair to the front door of apartment 4F. *People v. Payton,* [*Payton v. New York* ], which is 100 Supreme Court 1371 decided in April of

1980, prohibits the warrantless arrest of a defendant in his home for a routine felony unless there's exigent circumstances. In this particular case, I think it's even stronger because it's a—an arrest in the home of a third person with whom the defendant was residing. In this particular case, there's no indication of exigent circumstances. The police had plenty of time to obtain a warrant; there was seven days between January 17 and January 24 in which to obtain a warrant and there should be no question that there was ample time to obtain the arrest warrant.

Defendant would submit that the mere banging and knocking on the door at 5:30 in the morning and demanding that defendant open the door in itself is an invasion of the home that is contrary to the rules set forth in Payton and the question of whether the defendant ran toward the fire escape before the kicking of the door started, during the kicking or after the kicking is to a large extent not clear in the evidence and not essential to the Payton determination.

Now, the results that stem from what the defendant submits is an illegal arrest without an arrest warrant are set forth in *People v. Dunaway* [*Dunaway v. New York* ] as far as the confession goes, and that's 442 US 200 [99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) ] which suppresses the confession based—given during an

cutor distinguished *Payton* on the facts that petitioner was not the lessee of the apartment and that he was arrested on the roof of the apartment building, not in the apartment. He argued alternatively against retroactive application of the case. *See* Tr. at 203–207.

While the trial judge's decision on the motion to supress did not cite *Payton,* his holding that petitioner's "arrest ... on the roof of the apartment building and not in the apartment was in accordance with due process and not in violation of defendant's constitutional rights" necessarily rejected the argument counsel had competently made. After reviewing counsel's performance at the suppression hearing, the Court concludes that Shaw has, without question, failed to establish ineffective assistance at the trial level.

Shaw obtained new counsel for his appeal. As Point I of the appeal, counsel argued that "Since Appellant's Warrantless Arrest Was Illegal Under *Payton v. New York,* The Statement He Made And The Subsequent Photographic And Corporeal Identifications Must Be Suppressed As Fruits of The Illegal Arrest." Petitioner's Brief to the Appellate Division at 10. Counsel stated the facts of the arrest, reviewed *Payton* and the holdings of other similar cases concerning the Fourth Amendment, and vigorously disputed the trial judge's decision that since the officers had made the arrest outside the apartment Payton did not apply to Shaw. *Id.* at 4, 10–15. The state responded to the argument. Brief for Respondent State of New York at 9, *People v. Shaw, supra.* Appellate counsel made an adequate and even forceful argument based on *Payton.*

In reviewing the performance of defense counsel as a whole, both at the suppression hearing and on appeal, the Court concludes that Shaw has made no showing that he

illegal arrest, illegal detention even though the Miranda rights were given to the defendant, and defendant further submits that further result would be that the identification testimony as to identification, line-up and the photo array and even the in-court identification should be suppressed and that would be based

was incompetently represented. Accordingly, the Court need not consider prejudice.

## CONCLUSION

Petitioner availed himself of an opportunity to challenge the legality of his arrest. Accordingly, this Court may not reexamine the Fourth Amendment ground of his petition for habeas corpus. Petitioner has failed to substantiate his claim of ineffective assistance of counsel. Accordingly, the writ is denied and the instant petition is dismissed in its entirety. No certificate of probable cause shall issue pursuant to 28 U.S.C. § 2253 because the Court finds that there are no questions of substance on which the Court of Appeals should rule. Moreover, inasmuch as an appeal from this order would be frivolous, the Court certifies pursuant to the *in forma pauperis* provisions of 28 U.S.C. § 1915(a) that such an appeal would not be taken in good faith.

It is so ordered.

on *Davis v. Mississippi* [394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969)] which suppressed fingerprints that were obtained during an illegal detention and also *People v. Barnes* which is a New York case [101 Misc.2d 76], 420 New York sub [sic] 2d 629 [1979]. Tr. 201–203.