**David HOLMES, Petitioner,**

v.

**Charles SCULLY, Superintendent, Green Haven Correctional Facility; Robert Abrams, Attorney General of the State of New York; Denis Dillon, Nassau County District Attorney, Respondents.**

**No. CV–87–1715.**

United States District Court,
E.D. New York.

Feb. 15, 1989.

David Holmes, pro se.

Bruce Whitney, Nassau County Dist. Atty.'s Office, Mineola, N.Y., for respondents.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is a *pro se* petition for a writ of habeas corpus brought pursuant to 28 U.S. C. § 2254. For the reasons stated below, the court denies the petition in its entirety.

On February 4, 1983, a jury in the New York Supreme Court, Nassau County, convicted petitioner of burglary in the first degree and burglary in the second degree. He was sentenced as a second violent felony offender to consecutive prison terms of 10 to 20 years and 5 to 10 years, respectively. On July 23, 1984, the Appellate Division of the Supreme Court, Second Department, unanimously affirmed the judgment of conviction without opinion. *People v. Holmes*, 103 A.D.2d 1047, 479 N.Y.S.2d 390 (2d Dep't 1984). The Court of Appeals denied leave to appeal on August 27, 1984. *People v. Holmes*, 63 N.Y.2d 707, 480 N.Y. S.2d 1033, 469 N.E.2d 109 (1984).

On March 13, 1985, this court dismissed a petition essentially identical to this one [1] for failure to exhaust state court remedies as required under *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) and *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

On November 22, 1985, the judge who presided over the trial, County Judge Richard C. Delin, denied petitioner's motion, pursuant to N.Y.Crim.Proc.Law § 440.10

[1]. The new petition contains an additional claim alleging ineffectiveness of appellate counsel. Specifically, petitioner claims that appellate counsel's failure to raise any federal constitutional objection to expert testimony regarding blood analysis prejudiced petitioner by causing this court to dismiss the first habeas petition on exhaustion grounds. The State half-heartedly argues that this claim was never exhausted because a New York Court of Appeals decision, handed down *after* petitioner had already raised the issue with the trial court in his motion to vacate the judgment, requires such claims to be brought in the appellate tribunal by means of the common law writ of error coram nobis. *People v. Bachert,* 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987). Therefore, the State contends that this court should once again dismiss the petition for failure to exhaust each claim. The State concedes in its brief, however, that the court might well reject its exhaustion argument on the ground "that the State should not be allowed to play ping pong with petitioner's constitutional rights ..." Gov't Br. at 54. The State is correct. The State offers no explanation of why *Bachert* should be applied retroactively. Moreover, petitioner presented the claim on his motion to vacate the judgment, and it was denied on the merits, with leave to appeal being denied by the Appellate Division. Thus, the comity concerns of the exhaustion requirement have been satisfied and the court finds petitioner's ineffectiveness of appellate counsel claim to have been exhausted.

(McKinney 1983 & Supp.1988), to vacate the judgment of conviction. *People v. Holmes,* Ind. No. 53454 (N.Y.Co.Ct. November 22, 1985). On May 28, 1986, the Appellate Division, Second Department, denied leave to appeal from the denial of the motion to vacate judgment. *People v. Holmes,* Ind. No. 53454 (2d Dep't May 28, 1986). The state appears to concede that petitioner thereby exhausted the claims presented in the instant petition, which now can be addressed on the merits.

The refiled petition alleges that

1) the state trial court's denial of petitioner's motion for severance of the offenses charged in his indictment violated his right to a fair trial guaranteed by the due process clause of the Fourteenth Amendment;

2) that the trial court should have suppressed certain evidence obtained when the state illegally and unlawfully detained him without arraigning him, in violation of the Fifth, Sixth, and Fourteenth Amendments;

3) that his Sixth and Fourteenth Amendment rights to a fair trial were violated by the introduction of expert testimony concerning a comparison of blood found at one of the burglarized residences with a sample of petitioner's blood;

4) that the imposition of consecutive prison sentences upon him violated the Eighth Amendment's prohibition of cruel and unusual punishment; and

5) that appellate counsel's failure to raise any federal constitutional objections to the admissibility of the blood type analysis (see Claim 3, *supra*) prejudiced his attempts to win habeas relief and thereby denied him of his Sixth and Fourteenth Amendment right to the effective assistance of counsel.

### FACTS

The following facts are undisputed.

At about 4:00 a.m. on August 25, 1981, Ms. Ann Buller of 572 Dartmouth Street in Westbury awoke in her ground floor bedroom to the sound of her dogs barking. She managed to quiet them down, and then went to the bathroom located on the same floor.

At 4:30 a.m., her neighbor, Ms. Eleanor Franklin of 579 Dartmouth Street (located diagonally across the street from Ms. Buller's house) awoke to the sound of her own dog barking. She followed the dog downstairs to the kitchen where she discovered that a screen window over the kitchen sink had been cut and that the back door was open. Shortly thereafter, her son, Mr. John Franklin, also went downstairs to investigate. There, he observed a man he had never seen before walk from the living room to the front door, which was near the base of the stairs. The stranger turned, looked at Mr. Franklin, pointed a small handgun at him and said, "Get back up the stairs or I'll blow your head off." The intruder left, and Mr. Franklin called the police.

Meanwhile, across the street, Ms. Buller, upon returning to her bedroom, noticed the lights burning in the Franklin house and a police car parked outside, and dashed over in her robe.

The police at the Franklins' had discovered that the hole in the screen was only a foot or two from the back doorknob, and that small pieces of blood-stained green tissue paper—unlike any tissue paper in the Franklin residence—were embedded in the ragged edges of the cut screen. Other blood stains were found on the outside of the house, the windowsill, and the back doorknob.

One of the police officers, Detective Vincent Donnelly, escorted Ms. Buller home at about 6:00 a.m. and then returned to the Franklin house. When Ms. Buller turned on her kitchen light, she saw that the pane of glass next to the doorknob in the back door had been smashed out, and that the back door was open. Ms. Buller ran back to the Franklin house to get the police.

Upon examining the Buller house, the police recovered a piece of blood-stained glass from the floor near the back door. They found that the hallways and mouldings around Ms. Buller's bedroom door were blood-stained, and they followed a trail of bloodstains up the stairs to a bath-

room on the second floor. There they discovered that the medicine cabinet was open and a roll of adhesive tape had been taken out and left on the sink. Green tissue papers, from a box in the bathroom, were found, blood-stained, in the bathroom trash can.

On September 18, 1981, at 5:30 a.m., petitioner was arrested for burglarizing a residence at 170 Henry Street in Westbury. He was brought to the Third Precinct House at about 7:40 a.m., where he was read his *Miranda* rights. When questioned about a healing cut on his wrist, he claimed to have sustained it at the Wilfred Academy, a hairdressing school. He also consented to a police search of his aunt's house, where he resided, and to withdrawal of a blood sample. At 6:13 p.m., Mr. John Franklin identified him in a lineup as the man who had ordered him upstairs at gunpoint on August 25. Petitioner was arraigned the next morning at 9:00 a.m.

## I. CLAIM ONE (DENIAL OF SEVERANCE MOTION)

Petitioner claims that the state trial court's denial of his motion for severance of the offenses in his indictment violated his right to a fair trial under the due process clause of the Fourteenth Amendment.

As stated above, petitioner was tried and convicted on counts of burglary in the first and second degrees, for the burglaries of the Franklin and Buller residences, respectively. Prior to trial, the state court denied petitioner's motion to sever the two counts, holding that neither the state statutory provisions governing such severances (N.Y. Crim.Proc.Law. § 200.20(2) and (3)) nor the "interest of justice" required granting the motion.[2]

Petitioner claims that the denial of severance forced him to waive his right to testify concerning one of the counts of the indictment in order to preserve his right to remain silent as to the other count. He does not describe the testimony he would have given, or how his inability to so testify prejudiced him; in fact, he does not even specify which count he would have testified about.

The court in *Alvarez v. Wainwright*, 607 F.2d 683 (5th Cir.1979) rejected such a claim. In that case, petitioner had been tried on two counts of manslaughter by culpable negligence, two counts of manslaughter by an intoxicated motorist, temporary unauthorized use of a motor vehicle, and larceny of a firearm. He was convicted on the two counts of manslaughter by culpable negligence and was acquitted on all of the other charges. Before trial and at the close of the government's case, petitioner moved to sever the larceny of a firearm and unauthorized use of a motor vehicle charges from the manslaughter charges, but the trial court denied the motions.

In seeking habeas relief, petitioner claimed that he had wanted to testify as to the larceny of a firearm and unauthorized use of a motor vehicle charges, but did not want to testify as to any of the manslaughter charges. The Fifth Circuit, affirming the district court's denial of the habeas petition, held that "[s]everance is not mandatory simply because a defendant indicates that he wishes to testify on some counts but not on others." 607 F.2d at 685. The court held that, before habeas relief could be granted due to an allegedly erroneous joinder of offenses, petitioner must show that joinder rendered the state trial "fundamentally unfair,"[3] which in turn re-

---

2. *People v. Holmes*, Ind. No. 53454 (Nassau Co. Ct., Jan. 3, 1983) (Dillon, J.), annexed as Exhibit H to Respondents' Memorandum of Law in Opposition to Petitioner's *Pro Se* Application for a Writ of Habeas Corpus ["State's Brief"].

This court is not bound by the state court's finding regarding the "interests of justice." *See Panzavecchia v. Wainwright*, 658 F.2d 337, 339 (5th Cir.1981) (state court finding of no prejudice due to joinder of offenses is not entitled to § 2254(d) presumption of correctness).

3. Other federal courts have held that a state trial court's denial of a motion to sever the counts of an indictment can rise to the level of a constitutional violation where it renders the trial fundamentally unfair. *See Tribbitt v. Wainwright*, 540 F.2d 840, 841 (5th Cir.1976), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977); *Procter v. Butler*, 831 F.2d 1251, 1256–57 (5th Cir.1987), *cert. denied*, — U.S. —, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988); *Alejandro v. Scully*, 529 F.Supp. 650, 651–52 (S.D.N.Y.1982);

quires *"as a minimum"* that petitioner show prejudice sufficient to warrant relief under Fed.R.Crim.P. 14 or its state equivalent. *Id.* (emphasis in original).[4] In holding that petitioner had not met this burden, the Fifth Circuit noted that he had given "no indication concerning *why* he did not want to testify on the manslaughter counts or what testimony he would offer on the [other] crimes . . ." 607 F.2d at 686 (emphasis in original). Thus, petitioner had failed to demonstrate even the degree of prejudice necessary for severance in a non-habeas context:

> [N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reason for not wishing to testify on the other—to satisfy the

court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying. *Id.* (quoting *Baker v. United States,* 401 F.2d 958, 977 (D.C.Cir.1968)).

Here, petitioner has not offered *any* information "regarding the nature of the testimony he wish[ed] to give on one count and his reason for not wishing to testify on the other". *Id.* Therefore, the court cannot evaluate whether denial of his severance motion prejudiced his defense and his claim must be denied.[5]

Other grounds support this determination as well.

1) Under federal and New York law, a trial judge has discretion to permit joinder of two or more counts having the same legal character if evidence of the defendant's commission of any one of the counts would be admissible to prove his commission of the other counts. *Alejandro v.*

---

*Castro v. Sullivan,* 707 F.Supp. 682, (S.D.N.Y. 1988). *See also Corbett v. Bordenkircher,* 615 F.2d 722, 726 (6th Cir.), *cert. denied,* 449 U.S. 853, 101 S.Ct. 146, 66 L.Ed.2d 66 (1980) (denying habeas relief where joinder of counts was not so "egregiously prejudicial" as to constitute denial of due process).

However, the court's research has disclosed only one case in which a federal habeas petitioner succeeded with the claim that a state court's denial of a severance of counts rendered the trial fundamentally unfair. *See Panzavecchia v. Wainwright,* 658 F.2d 337 (5th Cir.1981) (affirming grant of habeas relief where evidence of prior conviction introduced in support of one count was irrelevant and prejudicial in relation to the other).

This court rejects decisions (such as *Madden v. Fogg,* 501 F.Supp. 243, 246 (S.D.N.Y.1980) and *Johnson v. Williams,* 508 F.Supp. 52, 56 (D.N.J. 1980), *aff'd on other grounds,* 666 F.2d 842 (3d Cir.1981)) which appear to state that misjoinder of offenses can never rise to the level of constitutional error. *Accord Alejandro,* 529 F.Supp. at 652 n. 1 (rejecting such decisions).

However, the court notes that even those courts which agree that misjoinder of offenses *can* be unconstitutional differ regarding the standard for assessing such claims. *Compare Alejandro,* 529 F.Supp. at 651 ("Habeas corpus review of a state trial court's grant of a consolidation or denial of a severance is even more

limited than direct appellate review") *with Breeland v. Blackburn,* 786 F.2d 1239, 1241 (5th Cir.1986) (federal court opinions reviewing severance decisions by state courts and by federal courts are "interchangeab[le]" because same standards apply to state and federal courts with respect to improper and prejudicial joinder). The court does not find it necessary to resolve this issue, however, since petitioner's claim fails to establish even an abuse of discretion, much less a constitutional violation. *See Alvarez v. Wainwright,* 607 F.2d at 685–86; *Alejandro,* 529 F.Supp. at 652.

4. Fed.R.Crim.P. 14 states, in relevant part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses . . . in an indictment or information . . . the court may order an election or separate trials of counts . . . or provide whatever other relief justice requires.

5. One federal habeas court has rejected all claims such as petitioner's *per se* as *never* representing a constitutional violation. *Conte v. Cardwell,* 475 F.2d 698, 700 (6th Cir.1972), *cert. denied,* 414 U.S. 873, 94 S.Ct. 134, 38 L.Ed.2d 91 (1973) ("That the joinder of two [offenses] in one trial may have confronted the petitioner with an election as to whether he should testify or exercise his right to refrain from testifying does not constitute a constitutionally impermissible infringement of his right to refrain from self-incrimination.")

*Scully,* 529 F.Supp. 650, 652 (S.D.N.Y. 1982). Since such joinder is not even an abuse of discretion, a federal habeas court is "unable even to consider" holding such joinder unconstitutional. *Id. See also Tribbitt v. Wainwright,* 540 F.2d 840, 841 (5th Cir.1976), *cert. denied,* 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977) (not unconstitutional to join rape and robbery charges where evidence of each offense would have been "technically admissible" at the trial of the other in order "[t]o give the finder of fact the complete picture of what transpired").

Here, evidence regarding the Buller burglary would have been admissible in a separate trial regarding the Franklin burglary, and vice versa. The robberies were linked in time and place, and by police testimony concerning such physical evidence as the green tissue paper and the bloodstains. Indeed, it is hard to imagine how Ms. Buller could have provided the jury with "the complete picture of what transpired" on the night her home was burglarized without also referring to the Franklin burglary. *Id.*

2) The federal habeas courts also have upheld joinder of state criminal offenses which "arose out of a single sequence of acts and arose at or about the same time." *Bourgeois v. Whitley,* 784 F.2d 718, 722 (5th Cir.1986); *accord Robinson v. Wyrick,* 735 F.2d 1091, 1094 (8th Cir.), *cert. denied,* 469 U.S. 983, 105 S.Ct. 390, 83 L.Ed.2d 324 (1984) (joinder not unconstitutional where "both offenses arose from one transaction or series of transactions.") In *Johnson v. Williams,* 508 F.Supp. 52, 56 (D.N.J.1980), *aff'd on other grounds,* 666 F.2d 842 (3d Cir.1981), the court found the state trial court's joinder of two robbery counts constitutional under circumstances similar to this case:

In discussing the same point on the co-defendant's appeal, the [New Jersey] Appellate Division noted that the two robberies were clearly part of a common plan or scheme, evidenced by the fact that after the first robbery the money

was hidden and defendants immediately committed the second robbery.... The record of the trial shows that five prosecution witnesses were essential to the proof of both robberies, that the robberies were committed within an hour of each other, that both targets were liquor stores, and that the same gun was used. *Id.* (citation omitted).

Here, too, one crime occurred immediately after the other, and, as discussed *supra,* the witnesses' testimony would have been admissible at separate trials of either count. Clearly, the two burglaries "arose out of a single sequence of acts and arose at or about the same time," *Bourgeois,* 784 F.2d at 722, so that there was no error in joinder of the two counts. *See also Castro v. Sullivan,* 707 F.Supp. 682 (S.D.N.Y. 1988), (joinder of two robbery counts not unconstitutional where crimes, although occurring four days apart, shared common modus operandi).

Accordingly, petitioner's first claim is denied, with prejudice.

## II. CLAIM TWO (DELAY BETWEEN ARREST AND ARRAIGNMENT)

■ Petitioner claims that delay in arraigning him "was tantamount to an illegal and unlawful detention" and resulted in the acquisition of incriminating evidence by coercion and/or by forestalling the petitioner's right to assistance of counsel. Pet.Br. at 7. Petitioner asserts that the trial court erred by refusing to suppress the items of evidence obtained by the state during this period of unlawful detention—consisting of certain oral statements to the police (which petitioner fails to specifically identify), the blood sample, and the lineup identification.

1) To the extent that the claim is premised upon failure to suppress evidence obtained due to the "illegal and unlawful detention" of petitioner, this court cannot consider it.[6] The United States Supreme

---

**6.** The *pro se* habeas petition states as the second ground for relief that "[p]etitioner's 5th, 6th and 14th Amends., rights [sic] were violated by the

use of inadmissible evidence at trial." Habeas Petition at 5. In support of this claim, the petition alleges that "[p]etitioner's 5th, 6th and

Court held in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) that a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial, unless the state denied that prisoner "an opportunity for full and fair litigation" of that claim. *Id.,* 428 U.S. at 494, 96 S.Ct. at 3052. In this circuit, "an opportunity for full and fair litigation" means that the state has provided all defendants with a "facially adequate procedure" for litigating Fourth Amendment claims, and that no "unconscionable breakdown" of that procedure occurred in the petitioner's specific case. *McPhail v. Warden, Attica Correctional Facility,* 707 F.2d 67, 70 (2d Cir. 1983); *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (*en banc*), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *Shaw v. Scully,* 654 F.Supp. 859, 863–64 (S.D.N.Y.1987). An "unconscionable breakdown" of the procedure is proven where petitioner demonstrates that "no state court … conducted a 'reasoned method of inquiry into relevant questions of fact and law,' or any inquiry at all" into the Fourth Amendment claim. *Id.,* 654 F.Supp. at 864, *quoting Cruz v. Alexander,* 477 F.Supp. 516, 523 (S.D.N.Y.1979).

The federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc.Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988), as being facially adequate. *Gates,* 568 F.2d at 837 & n. 4; *Shaw,* 654 F.Supp. at 864. Therefore, "federal scrutiny of [Holmes'] Fourth Amendment claim[ ] is not warranted unless he demonstrates that he was in fact precluded from

utilizing [the state procedure] by an unconscionable breakdown in the [state's] review process." *Shaw,* 654 F.Supp. at 864.

Here there was no "unconscionable breakdown" in the process provided by N.Y.Crim.Proc.Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988). Petitioner availed himself of that process, and his motion to suppress was denied in a written opinion dated December 20, 1982 (reproduced in State's Br. at 11–16) which leaves no doubt that the trial court "conducted a 'reasoned method of inquiry into relevant questions of fact and law,' " *Shaw,* 654 F.Supp. at 864. Therefore, to the extent that it is based on the Fourth Amendment, petitioner's second claim must be denied, with prejudice.

■ 2) To the extent that petitioner's second claim rests on alleged violations of the Fifth Amendment, it must be rejected because it is procedurally barred.

At best, petitioner only has a Fifth Amendment claim as to the statements he made on the morning of September 18, 1981, but not as to the blood sample or the lineup identification. The Fifth Amendment is only concerned with self-incrimination by acts of a testimonial or communicative nature. *Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed. 2d 908 (1966) (blood sample admissible because it "was neither petitioner's testimony nor evidence relating to some communicative act or writing" by defendant (*id.,* 384 U.S. at 765, 86 S.Ct. at 1833); *United States v. Wade,* 388 U.S. 218, 221–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967) (compelled participation in lineup not testimonial and admission of identification

14th Amends., rights [sic] were violated when illegally obtained evidence was used against petitioner at trial. *Petitioner was prejudice [sic] by the delay in not being properly arraigned after arrest." Id.* (emphasis added). Although the petition itself does not explicitly refer to the Fourth Amendment, its reference to delay in arraignment, when read in conjunction with the "illegal and unlawful detention" language in petitioner's brief, leaves no doubt that petitioner is alleging "a pattern of facts that is well within the mainstream" of Fourth Amendment litigation. *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 194 (2d Cir.1982) (en

banc) (presentation to state courts of factual allegations recognizable as being within "mainstream" of constitutional litigation satisfy exhaustion requirement of 28 U.S.C. § 2254(b) and (c)).

Also within the ambit of the Fourth Amendment, and therefore unreviewable, is petitioner's claim, raised only implicitly in his brief, that the police should not have detained him while investigating whether he burglarized homes other than the one in which he was found and arrested (*i.e.,* the Buller and Franklin residences).

therefore not violative of Fifth Amendment).

■ Moreover, to the extent that federal habeas courts have even considered the constitutionality of delaying arraignment of state defendants, they have only done so as part of a Fifth Amendment based analysis of the voluntariness of confessions. Thus, delay in arraigning a state defendant is not, in itself, a constitutional violation,[7] but is at most a factor to be weighed in determining whether or not, viewed in the totality of the circumstances, an incriminating statement was the product of police coercion. *United States ex rel. Wade v. Jackson,* 256 F.2d 7, 11–12 (2d Cir.), *cert. denied,* 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed. 2d 1158 (1958) (granting habeas relief where petitioner was kept incommunicado and appeared to have been physically tortured during 23½ hour delay between arrest and arraignment); *Robinson v. Smith,* 451 F.Supp. 1278, 1289 (W.D.N.Y.1978) (reversing conviction where delay in arraigning defendant resulted in his making inculpatory statement regarding participation in robbery without having been informed that he was also charged with felony murder, because under such circumstances defendant did not know "the nature of the seriousness of the charges against him"). *See*

also *Stroble v. California,* 343 U.S. 181, 196–97, 72 S.Ct. 599, 606–07, 96 L.Ed. 872 (1952); *Gallegos v. Nebraska,* 342 U.S. 55, 63–65, 72 S.Ct. 141, 146–47, 96 L.Ed. 86 (1951); *United States ex rel. Kassim v. Wilkins,* 298 F.2d 479, 480 (2d Cir.), *cert. denied,* 371 U.S. 832, 83 S.Ct. 54, 9 L.Ed.2d 69 (1962); *United States v. LaVallee,* 279 F.2d 396, 399 (2d Cir.), *cert. denied,* 364 U.S. 922, 81 S.Ct. 289, 5 L.Ed.2d 262 (1960); *United States ex rel. Rosner v. Warden, New York State Penitentiary,* 329 F.Supp. 673, 675 (E.D.N.Y.1971); *United States ex rel. Ali v. Deegan,* 298 F.Supp. 398 (S.D.N. Y.1969); *United States ex rel. Candaleria v. Mancusi,* 284 F.Supp. 171 (S.D.N.Y.1968) (Weinfeld, J.) (*dicta* because claim unpreserved for review); *Lee v. Henderson,* 342 F.Supp. 561, 563 (W.D.N.Y.1972); *United States ex rel. Hayward v. Johnson,* 508 F.2d 322, 330 (3d Cir.), *cert. denied,* 422 U.S. 1011, 95 S.Ct. 2637, 45 L.Ed.2d 675 (1975) (*dicta* because claim unexhausted); *Smith v. Warden, Maryland Penitentiary,* 477 F.Supp. 500, 501 (D.Md.1979).

■ Petitioner is barred from raising the issue of the voluntariness of his statements to the police, however, because he did not raise that issue on his direct state court appeal.[8] Defendant–Appellant's Brief at

---

**7.** As a state prisoner, petitioner cannot avail himself of the so-called *"McNabb–Mallory"* rule. In *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), the Supreme Court, exercising its supervisory power over the federal courts, held that unnecessary delays between arrest and arraignment required suppression of confessions which the defendants made during that period. Subsequently, Fed.R. Crim.P. 5(a) was adopted, requiring in federal criminal cases that an arrested person must be brought before a magistrate or state official "without unnecessary delay." In *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1947), the Supreme Court held that Rule 5(a) forbids a delay which is "of a nature to give opportunity for the extraction of a confession." *Id.,* 354 U.S. at 455, 77 S.Ct. at 1360. However, the *McNabb–Mallory* rule, since it is supervisory and not constitutional in nature, is inapplicable to state prosecutions. *Gallegos v. Nebraska,* 342 U.S. 55, 63–64, 72 S.Ct. 141, 146–147, 96 L.Ed. 86 (1951); *Brown v. Allen,* 344 U.S. 443, 476, 73 S.Ct. 397, 417, 97 L.Ed. 469 (1953); *Burns v. Wilson,* 346 U.S. 137, 145 n. 12, 73 S.Ct. 1045, 1050 n. 12, 97 L.Ed. 1508 (1953) (*McNabb–Mallory* rule inapplicable

in the courts-martial); *United States ex rel. Hayward v. Johnson,* 508 F.2d 322, 330 n. 27 (3d Cir.), *cert. denied,* 422 U.S. 1011, 95 S.Ct. 2637, 45 L.Ed.2d 675 (1975); *Smith v. Warden, Maryland Penitentiary,* 477 F.Supp. 500, 501 (D.Md. 1979); *United States ex rel. Chennault v. Smith,* 366 F.Supp. 717, 724 n. 11 (E.D.N.Y.1973), *aff'd,* 495 F.2d 1367 (2d Cir.1974), *cert. denied,* 419 U.S. 986, 95 S.Ct. 245, 42 L.Ed.2d 194 (1974). *See also Culombe v. Connecticut,* 367 U.S. 568, 590–91, 81 S.Ct. 1860, 1872–73, 6 L.Ed.2d 1037 (1961) (fourteenth amendment does not prohibit a state "from such detention and examination of a suspect as, under all the circumstances, is found not to be coercive"; citing numerous cases).

**8.** In the course of making his "delayed arraignment" claim, petitioner also asserts that he never "unequivocally" waived his right to counsel. Petitioner's brief also implies, but never actually asserts, that he may have been intoxicated when he waived his right to counsel, so that the waiver was not made voluntarily. Finally, petitioner asserts that while being unlawfully detained without arraignment, he told his sister to retain an attorney. However, he does not claim that he made such a request to the police.

7-12.[9] *See Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (inadvertent failure to follow state appellate procedures for raising an issue bars consideration of that issue on federal habeas); *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (deliberate failure to raise issue on direct state appeal bars consideration of that issue on federal habeas). Rather, petitioner's appellate brief, while somewhat vague and discursive, only challenged the trial court's refusal to suppress the lineup identification and the expert testimony regarding the blood analysis. Petitioner has not alleged any "cause" for his failure to raise the issue in the Appellate Division. *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2646 ("[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."). *Cf. Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984) ("[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim" on direct state appeal).[10]

Thus, to the extent that petitioner's second claim is based on an alleged violation of the Fifth Amendment, it must be denied, with prejudice.

■ 3) Finally, if the claim is viewed as resting on an alleged violation of the Sixth Amendment right to counsel, it must be rejected. It has already been shown that state delay in arraigning an arrested person does not in itself justify habeas relief, except insofar as it contributes to a finding that defendant's inculpatory statements were the product of coercion. Moreover, the right to counsel only comes into existence "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (no right to counsel at pre-arraignment lineup); *Moran v. Burbine,* 475 U.S. 412, 428–32, 106 S.Ct. 1135, 1145–47, 89 L.Ed.2d 410 (1986) (no right to counsel at custodial interrogation prior to initiation of adversary judicial criminal proceedings). A mere delay in arraigning an arrested person—which is not in itself a cognizable constitutional violation—cannot give rise to a right to counsel where no such right exists.

Accordingly, whether petitioner's second claim is viewed as based on an alleged violation of the Fourth, Fifth or Sixth Amendments, it must be denied, with prejudice.

## III. CLAIM THREE (ADMISSION OF EXPERT TESTIMONY CONCERNING BLOOD ANALYSIS)

■ Petitioner's third claim is that his Sixth and Fourteenth rights to a fair trial

---

Each of these claims—assuming petitioner intends to assert them distinctly rather than as part of his "delayed arraignment" claim—is procedurally barred by petitioner's failure to raise it in his direct appeal.

**9.** Petitioner is also barred from raising the issue on a state coram nobis motion. N.Y.Crim. Proc.Law § 440.10(2)(c) (McKinney 1983 & Supp.1988).

**10.** Moreover, petitioner has not pointed to a single incriminating statement which should have been suppressed because it was made by him during the period of allegedly unlawful detainment. On appeal, he conceded that the unlawful detainment did not commence until 9:30 a.m. on September 18, 1981. Defendant–Appellant's Br. at 9, 11–12. Yet his brief to this court refers to only two statements made on that day: (1) his statement, made *prior* to 9:30

a.m., that he cut his wrist at the Wilfred Academy; and (2) his denial of any involvement in the burglaries, made around noon that day. The former statement cannot be the fruit of an unlawful, coercive delay, since, as petitioner conceded, the delay had not yet begun. The latter statement is not at all incriminating and therefore does not implicate the Fifth Amendment. (Petitioner challenges no statements made on the following day, September 19, and in any event, the state court suppressed those statements.)

Petitioner's failure to indicate which of his statements should have been suppressed not only dooms his substantive Fifth Amendment claim, but also represents a failure to satisfy the "prejudice" prong of the "cause-and-prejudice" standard adopted in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for determining when a habeas court may review a procedurally defaulted claim.

were violated by the introduction of expert testimony concerning a comparison of blood found at the Buller residence with a sample of petitioner's blood. After identifying six iso-enzymes and the major group of petitioner's blood, one of the experts, Detective Fraas, concluded that petitioner's blood group is found in only 0.25% of the population. The other expert, Detective Wanlass, testified that the blood group of the sample recovered from the scene, which matched petitioner's, is found in only 1.6% of the population. Petitioner does not challenge the accuracy of this testimony or the experts' qualifications, but claims that the testimony should have been excluded because the jury could have improperly inferred that the blood found at the scene must be petitioner's, even though this cannot be known with absolute certainty.

Assuming *arguendo* that admission of the blood analysis was error under state law—which does not appear to be the case—such error is not cognizable in federal habeas actions unless it rose to such a level that it deprived petitioner's trial of "fundamental fairness" or violated a specific constitutional protection. *Matlock v. Rose*, 731 F.2d 1236, 1242 (6th Cir.1984), *cert. denied*, 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985); *Lenza v. Wyrick*, 665 F.2d 804, 810 (8th Cir.1981) (same). No showing of fundamental unfairness or of a specific constitutional violation has been made; in fact, petitioner has not alleged a single fact suggesting that the expert testimony in question was less probative or more prejudicial than similar blood analysis testimony routinely admitted in criminal cases.

Because petitioner's third claim does not allege a violation of any federal constitutional right, it must be denied, with prejudice.

## IV. CLAIM IV (EXCESSIVE SENTENCE)

■ Petitioner claims that the imposition of consecutive prison sentences upon him violated the Eighth Amendment's prohibition of cruel and unusual punishment. He asserts that concurrent sentences should have been imposed, instead.

At the conclusion of his trial, he was convicted of burglary in the second degree (a class C felony under N.Y.Penal Law ["Penal Law"] § 140.25 (McKinney 1988)) and burglary in the first degree (a class B felony under Penal Law § 140.30), the sentences to run consecutively as authorized by Penal Law § 70.25(1). Because petitioner was a second violent felony offender,[11] he could have received consecutive terms of 12½ to 25 years and 7½ to 15 years, pursuant to Penal Law § 70.04(3)(a), (c) and (4). Instead, he received consecutive terms of 10 to 20 years and 5 to 10 years. Thus, under New York law, petitioner could have been exposed to as much as 40 years in jail; under the sentences he actually received, his maximum possible stay in jail is 25 years.

Moreover, petitioner has not made any showing that his sentence is disproportionate to his crime. Under *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 3010, 77 L.Ed.2d 637 (1983), a court considering the proportionality of a sentence under the Eighth Amendment should be guided by

objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

Petitioner has not even addressed these factors. The gravity of the offenses cannot be denied: on August 25, 1981, petitioner committed two separate nighttime burglaries of occupied family residences, and pointed a gun at a resident who confronted him during one of the crimes. Petitioner has not shown that the penalty imposed on him is harsher than that imposed on other criminals in New York, or that other jurisdictions impose lighter sentences.

**11.** In 1977, petitioner was convicted of robbing a woman of $70 at shotgun-point and then beating her.

Accordingly, petitioner's fourth claim must be denied, with prejudice.

## V. Claim V (Ineffective Assistance of Appellate Counsel)

 Petitioner contends that appellate counsel's failure to raise any federal constitutional objection to the admissibility of the blood type analysis (see discussion of Claim III, *supra*) prejudiced his attempts to win habeas relief, presumably because this court previously dismissed his petition for failure to exhaust this claim. Since the court has concluded that no federal constitutional objection could have been raised, petitioner's ineffective assistance claim necessarily fails and must be denied, with prejudice.

### *Conclusion*

For the reasons stated above, the petition for a writ of habeas corpus is denied in its entirety, with prejudice. Pursuant to 28 U.S.C. § 2253, petitioner's application for a certificate of probable cause is denied.

SO ORDERED.